By the Court.—Speir, J.
A preamble adopted by the department of parks on the 4th of August, 1876, is set forth in the complaint, reciting that the plaintiff had, without advice as to the effect it might have on his position as landscape architect, accepted the office of commissioner of the State survey; that some doubt had been expressed on the point, and that he had resigned the office, and had without interruption performed the services on which he was employed, and it was resolved that an allowance and payment be made to him for the services to the department, from the 31st day of May, 1876, at the rate of $6,000.
*487 No salary or compensation was attached to the office of commissioner of the State survey. The plaintiff took the oath of office on the 31st of May, 1876, and the board was organized.
The defense is based upon the following provision of section 114 of chapter 335 of the Laws of 1873 : “ Any person holding office, whether by election or appointment, who shall, during his term of office, accept, hold or retain any other civil office of honor, trust or emolument, under the government of the United States (except commissioners for the taking of bail, or register of any court) or of the State (except the office of notary public or commissioner of deeds, or officer of the national guard), or who shall hold or accept any other office connected with the government of the city of New York, or who shall accept a seat in the legislature, shall be deemed thereby to have vacated every office held by him under the city government. No person shall hold two city or county offices, except as expressly provided in this act; nor shall any officer under the city government hold or retain an office under the county government, except when he holds such office ex-officio, by virtue of an act of the legislature ; and in such case he shall draw no salary for such ex-officio office.”
Was the plaintiff, a landscape architect in the Department of Public Parks, an officer within the prohibition of the preceding section ?
An office has been defined to be a right to exercise a public function or employment, and to take the fees and emoluments belonging to it. An officer is one who is lawfully invested with an office (Bacon’s Abridgment, vol. 7, title Office and Officer, p. 279, ed. of 1860; Bouv. Law Dic.). The idea of an officer clearly embraces the idea of tenure, duration, fees or emoluments, and powers, as well as that of duty. The nature of the power and the control over the officer appointed does not at all depend upon the source from which it email *488 ates. The execution of the power, and the control over the officer, depends upon the authority of law, and not upon the agent who is to administer it. The tenure of ancient common law offices, and the rules and principles by which they are governed, have no application in this country. In England the tenure of office depends in a great measure upon ancient usage. Here there is no ancient usage which can apply to, and govern the tenure of officers created by the constitution and laws. In such a case the tenure of the office is determined by the meaning of the statute. Every office under the constitution implies an authority to exercise some portion of the sovereign power of the State, either in making, executing or administering the laws. In the section of the statute there is no ambiguity, and there is no room for construction or interpretation. The words are clear and explicit: “Ho person shall hold two city or county offices, except as provided in this act; nor shall any officer under the city government hold, or retain an office under the county government, except when he holds such office ex-officio, by virtue of an act of the legislature ; and in such case he shall draw no salary for such ex-officio office.” The distinction is plainly taken between a person acting as a servant or employee, who does not discharge independent duties, but acts by direction of others, and an officer empowered to act in the discharge of a duty, or trust, under obligar tions imposed by the sanctions and restraints of legal authority in official life. I can find nothing in all the sections of the charter which does not strictly limit the prohibition to persons included in the foregoing definition given by the elementary writers. The plaintiff received no certificate of appointment—took no oath for the faithful performance of duties—had no term or tenure of office—discharged no duties, and exercised no powers depending directly upon the authority of-law. He was simply the servant of. the commissioners , *489 of the park, and responsible only to them. His responsibility was limited to them, and is in no way distinguishable from that of the carpenter and the mason who are employed to build the bridges or erect the buildings designed by the architect. The nature and dignity of the duties confided to the employees by the commissioners do not determine the character of the position. It is in no proper sense official according to any sense in which the term is used in the statute' above recited.
The justices of the supreme court of Maine, 1822, gave an opinion as to whether certain duties which had been delegated by agents to be appointed by the governor, constituted the appointees officers. The case is reported in the appendix to the first edition of 3 Greenleaf App. No. 2. They say, "There is a manifest difference between an office and an employment under the government. We apprehend that the term ‘ office ’ implies a delegation of a portion of the sovereign power to, and possession of it by, the person filling the office, and the exercise of such power within legal limits constitutes the correct discharge of the duties of such office.” The question was directly put before the learned judges for decision, and they returned a sharply defined answer, wholly disconnected with other matter,' and it seems to me to be conclusive. The courts in this State are in accord with the foregoing opinion.
The plaintiff must have judgment for the amount claimed in the complaint, with costs.