FOURNET, Justice.
 

 The indictment charging the defendants, W. D. Dark and L. J. Melton, under the provisions of Section 1 of Act 78 of 1890, with accepting a bribe was quashed by the trial judge upon defendants’ motion and demurrer and the state has appealed.
 

 
 *144
 
 In the indictment the defendants are charged with “ * * * being * * * State Officers, and as such State Officers, did * * * feloniously receive from one George D. Pipes, a sum of money, to-wit: One Thousand and no/100 Dollars ($1,-000.00) lawful money of the United States of America, as a bribe, present or reward for the purpose of inducing and influencing them, the said W. D. Dark and L. J. Melton, as such State Officers, to protect and shield the said George D. Pipes and one Barlow Inabnet from prosecution for violations of the conservation laws of the State of Louisiana, and the rules, regulations and orders of the Commissioner of Conservation * * * and to then and there be induced and influenced to exercise a power in them invested as such officers, and to perform a duty of them required with partiality and favor.”
 

 ' The basis of the demurrer and motion to quash is that the indictment as drawn up does not charge an offense known to the laws of Louisiana in that (1) the allegation in.the indictment that defendants are “State Officers,” without the stating of any facts that under the law would make them state officers, is but a statement.of a conclusion of law and (2) that “ * * * it does not specifically state the facts and circumstances necessary to constitute the offense of bribery of a state officer under Act 78 of 1890,” contrary to the provisions of the Constitution guaranteeing that an accused in all criminal prosecutions will be “informed of the nature and cause of the accusation against him.” Article I, Section 10 of the Constitution of 1921.
 

 After the demurrer and motion to quash were submitted and argued, the district attorney, with the permission of the court, amended the indictment, over the objection of the defendant, by causing to be inserted after the words “being * * * State Officers” the phrase “to-wit: Conservation Agents of the Department of Conservation.” The trial judge then sustained the demurrer and the motion to quash.
 

 Defendants argue that they are employees of the state and not state officers within the meaning and contemplation of the act under which they are being prosecuted (Section 1 of Act 78 of 1890), in that a state officer must not only be a holder of an office established by the constitution or created by the legislature, but that, in addition thereto, he must possess all' of the following qualifications, the lack of any one of which makes him a mere employee of the state and not an officer within the intendment of the law, viz.: (1) A portion of the sovereign power of government must be delegated to him to be exercised for the.benefit of the public; (2) he must be appointed for a fixed tenure; (3) he must receive a salary or emoluments that are definitely fixed; and (4) that he must take the oath of office required by. the Constitution of 1921, Article XIX, Section 1. In support of this contention counsel for defendants cite the following authorities: People ex rel. Throop v. Langdon, 40 Mich. 673; In re Opinion of Justices, 3 Me. 484; United States v. Schlierholz, D.C., 137 F. 616; Metcalf & Eddy v. Mitchell, 269 U.S. 514, 46 S.Ct. 172, 70 L.Ed. 384; Helvering v. Powers, 293 U.S. 214, 55 S.Ct. 171,
 
 *146
 
 79 L.Ed. 291; Commissioner of Internal Revenue v. Harlan, 9 Cir., 80 F.2d 660; Varden v. Ridings, D.C., 20 F.Supp. 495; Smith v. Board of Education of Ludlow, Ky., D.C., 23 F.Supp. 328; State ex rel. Barney v. Hawkins, 79 Mont. 506, 257 P. 411, 53 A.L.R. 583; Lindsey v. Attorney General, 33 Miss. 508; Olmstead v. New York, 42 N.Y.Super.Ct. 481, 10 Jones & S. 481; State ex rel. Kendall v. Cole, 38 Nev. 215, 148 P. 551; United States v. Heinze, C.C., 177 F. 770; Scully v. United States, C.C., 193 F. 185; Moll v. Sbisa, 51 La.Ann. 290, 25 So. 141; Groves v. Barden, 169 N.C. 8, 84 S.E. 1042, L.R.A.1917A, 228, Ann.Cas.1917D, 316; Martin v. United States, 8 Cir., 168 F. 198; 46 Corpus Juris 927.
 

 As stated by Throop in his work on Public Officers, “The question, who is a public officer, and its corelative, what is a public office, becomes often important, and sometimes difficult of solution, chiefly in cases involving the construction of statutes or constitutional provisions, relating to public officers generally.
 
 * * *”
 
 Section !.
 

 From a study of the authorities cited by counsel, as well as a review of the text writers and other authorities on the subject, we find that the courts have differed in deciding what is a public office and who are public officers principally because of the difficulty they have experienced in applying. these terms to the many ramifications into which they branch and to the particular facts and circumstances of each case. In other words, the courts have not been able to arrive at a definition that will, faultlessly, fit all cases. They have been compelled, rather, to decide whether, in the case under consideration, the position of a given person comes fairly within the constitutional or legislative intendment and contemplation, their conclusions varying, of course, with the different constitutional and legislative provisions in the respective jurisdictions and the nature of the respective cases. For example, a person holding a position in a department of the state government may be a state officer within the intendment of a law that exempts the salaries of state officers from seizure under garnishment proceedings, while, on the other hand, he may not be a state officer within the intendment of a law that makes it possible to test a person’s title and right to a state office under quo warranto proceedings.
 

 The cases in the American Jurisprudence that are most frequently quoted from when this subject matter is being treated are United States v. Maurice, Fed.Cas. No. 15,747, 2 Brock. 96, by Chief Justice Marshall; People ex rel. Throop v. Langdon, 40 Mich. 673, by Judge Cooley; and In re Opinion of Justices, 3 Me. 484, by three justices of the Supreme Court of Maine.
 

 Chief Justice Marshall, in defining the term “office” and distinguishing the same from an employment, said:
 
 “An office is defined to he a ‘public charge or employment,’ and he who performs the duties of the office, is an officer.
 
 * * * Although an office is ‘an employment,’ it does not follow that every employment is an office. A man may certainly be employed under a contract, express or im
 
 *148
 
 plied, to do an act, or perform a service, without becoming an officer. But if a
 
 duty
 
 be a continuing one, which is defined by rules prescribed by the government, and not by contract, which an individual is appointed by the government to perform, who enters on the duties appertaining to his station, without any contract defining them,
 
 if those duties continue, though the person be
 
 changed; it seems very difficult to distinguish such a charge or employment from an office, or the person who performs the duties from an officer.” United States v. Maurice, supra. (Italics ours.) See Throop on Public Officers, Section 3; Mechem on Public Officers, Sections 2 and 8; 46 Corpus Juris 928, Section 19; 2 Bouvier’s Law Dictionary, Rawle’s Third Revision, 2401; McCornick v. Thatcher, 8 Utah 294, 30 P. 1091, 17 L.R.A. 243; and State v. Hocker, 39 Fla. 477, 22 So. 721, 63 Am.St.Rep. 174.
 

 Judge Cooley said: “The officer is distinguished from the employee in .the greater importance, dignity and independence of his position; in being required to take an official oath, and perhaps to give an official bond; in the liability to be called to account as a public offender for misfeasance or nonfeasance in office, and usually, though not necessarily, in the tenure of his position.
 
 In particular cases other distinctions will appear which we not general.”
 
 Throop v. Langdon, supra. (Italics ours.)
 

 The judges of the Supreme Court of Maine, advising the governor of the state at his request upon this same subject matter, said:
 
 “We apprehend that the term ‘office' implies a delegation of a portion erf the sovereign power to, and possession of it by the person filling the office; —and the exercise of such power within legal limits, constitutes the correct discharge of the duties of such office. The power thus delegated and possessed
 
 may be a portion belonging sometimes to one of the three great departments, and sometimes to another; still it
 
 is a legal power, which may be rightfully exercised, and in its effects it will bind the rights of others, and be subject to revision and correction only according to the standing laws of the State.
 
 An employment merely has none of these distinguishing features. A public agent acts only on behalf of his principal, the public, whose sanction is generally considered as necessary to give the acts performed the authority and power of a public act or law. And if the act be such as not to require such subsequent . sanction, still it is only a species of service performed under the public authority and for the public good, but not in the execution of any standing laws, which are considered as the rules of action and the guardians of rights.
 
 * * *” 3
 
 Me. 481, 482. (Italics ours.)
 

 Chief Justice. Pearson, in the case of State ex rel. Clark v. Stanley, 66 N.C. 59, 8 Am.Rep. 488, another leading authority frequently quoted with approval, said that “A public office is an agency for the State, and the person whose duty it is to perform this agency is a public officer. This, we consider to be the true definition of a public officer in its original broad sense.
 
 The essence of it is, the duty of performing an agency, that is, of doing
 
 
 *150
 

 some act or acts, or. series of acts for the State.
 
 * * *
 
 the oath and the salary or fees, are mere incidents, and constitute no part of the office:
 
 Where no salary or fees are annexed to the office, it is a naked office — honorary,—and is supposed to be accepted, merely for the public good. This definition also excludes the idea, that a public office must have continuance. It can make [no] difference, whether there be but one act, or a series of acts to be done— whether the office expires as soon as the one act is done, or is to be held for years or during good behavior. * * * ” (Italics ours.)
 

 The best general and most concise definition we have been able to find of what is a public office and who are public officers is that given by Mechem in his work on Public Officers, viz.: “A public office is the right, authority and duty, created and conferred by law, by which for a given period, either fixed by law or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government, to be exercised by him for the benefit of the public. The individual so invested is a public officer.” Section 1, page 1.
 

 The author (Mechem) further states that “The most important characteristic which distinguishes an office from an employment or contract is that
 
 the creation and conferring of an office involves a delegation to the individual of some of the sovereign functions of government, to be exercised by him for the benefit of the public;
 
 — that
 
 some portion of the sovereignty of the country,
 
 either legislative, executive or judicial,
 
 attaches, for. the time being, to be exercised for the public benefit.
 
 Unless the powers conferred are of this nature, the individual is not a public officer.” (Section 4.) “In distinguishing between an office and an employment, the fact that the powers in question are created and conferred by law, is an important criterion. * * *” (Section 5.) But, in Sections 6 and 7, it is pointed out by the author that while the requirements of an oath of office and the payment of a salary or fee may be of assistance in determining the nature of the position, they are not conclusive, and, therefore, not indispensable criteria. (Italics ours.)
 

 In English jurisprudence “ * * * it is said, that every man is a public officer who hath any duty concerning the public; and he is not the less a public officer, where his authority is confined to narrow limits; because it is the duty of his office, and the nature of that duty, which makes him a public officer, and not the extent of his authority.” Bacon’s Abridgement, Vol. Ill, Title Office and Officers, A. See, also, Carthew 479; 4 Jacobs’ Law Dictionary 433; and Vaughn v. English, 8 Cal. 39.
 

 In our own jurisprudence
 
 "This court has defined a state office to be one created by the Legislature, or one established in the first instance by the Constitu
 
 tion.” State v. Titus, 152 La. 1011, 95 So. 106, 107. See, also, State v. Taylor, 44 La.Ann. 783, 11 So. 132, and State v. Rogers, 138 La. 867, 70 So. 863. In the Titus caser the court, continuing, said: “This definition as to what constitutes a
 
 *152
 
 state office is appropriate
 
 in
 
 interpreting the statute under consideration; and therefore, examining to ascertain whether such an office has been created, either by the Constitution or the Legislature, we find that it has been created by the latter. * * *
 

 “While from the above it appears that the deputy appointed is under the sheriff’s general, directions, and that the latter is responsible for the deputy’s conduct, yet it also appears that the deputy is responsible to the state, under whose authority he is appointed, being criminally responsible for his delinquencies in office, and that he is required to take an oath before discharging his duties, and is authorized to discharge the duties required by law of the sheriff, who, with the sanction of the judge, appointed him. Hence he is a public officer. Mechem, Public Officers, p. 17, § 38.
 
 As his office is one created by the Legislature, he is, within the purview of Act No. 11 of 1882, an officer, of this state.”
 
 (Italics ours.)
 

 The department of this state charged with conserving its natural resources was first created by Act 278 of 1908 and was then known as the “Board of Commissioners for the Protection of Birds, Game and Fish.” This board was composed of three commissioners and they were authorized to appoint “ * * * one or more competent men in each parish in the State, whose powers and duties shall be to enforce compliance with the Game Laws of the State and who shall be known as game and fish wardens * * Section 3. The act also provided that the game and fish wardens so appointed were to hold office during the pleasure of the Board of Commissioners, and their duties were “ * * * [to] enforce all laws relative to the protection of birds, game and fish,
 
 and the provisions supplemental thereto,
 
 [to] serve and execute all legal process, and [to] have the power and authority to arrest at any time, without warrant, any person or persons found by them in the act of violating the laws now in force,
 
 or that hereafter may be enacted
 
 for the preservation and protection of birds, game and fish * * *.”■ Section 4. (Italics and brackets ours.)
 

 And though in the years since the “Board of Commissioners for the Protection of Birds, Game and Fish” was created, successive legislatures have changed in some respects its original organization and operation and enlarged the scope of its activities and powers (See Acts 254 and 265 of 1910, Acts 127 and 204 of 1912, Acts 45 and 66 of 1916, Act 105 of 1918, Acts 133, 134, 139 and 224 of 1924; Act 174 of 1928; Act 45 of 1930; Act 97 of 1934; Acts 37 and 213 of 1936; Act 256 of 1938; etc.), it remain's, in its essentials, the same department of the state government that it was when first created in 1908.
 

 By Act 127 of 1912, the name of the “Board of Commissioners for the Protection of Birds, Game and Fish” was changed and the “Conservation Commission of Louisiana” was created and established in its place. This, commission was, likewise, composed of three commissioners and it was “ * * * constituted a department of the State government for the purpose of the protection, management, and con
 
 *154
 
 servation of the oyster fields and water bottoms of the State; to protect the birds, fish, shell fish and wild quadrupeds of the State, and the natural and mineral and forestry resources of the State and to see that all laws relative thereto are enforced, and, as such, it is hereby created a body politic or political corporation invested with all powers inherent in such corporation.” Section 2.
 

 By Act 66 of 1916, amending Section 1 of Act 127 of 1912, the number of commissioners was reduced from three to one, and, by Act 105 of 1918, the name of the commission was changed from the “Conservation Commission of Louisiana” to the “Department of Conservation” and it was placed under the control of the one Commissioner who was to be known as the “Commissioner of Conservation.” The department, as thus organized and set up, was made a constitutional department of the state government by its incorporation in the Constitution of 1921, and the status of the Commissioner of Conservation was changed from that of a statutory officer to that of a constitutional officer. Sections 18 and 20 of Article V and Section 1 of Article VI.
 

 Under the provisions of Act 105 of 1918 the Commissioner of Conservation is granted the power “ * * *
 
 to appoint competent men throughout the State to be known as rConservation Agents,’ with the authority to carry arms concealed while in the performance of their duties, who shall have full power under the law to enforce all laws for the protection of the natural resources of the State.”
 
 (Section 2.) The act further provides
 
 that the Department of Conservation, through its officers and agents, has full power to
 
 “ * * *
 
 enforce all laws for the protection of the *
 
 * *
 
 natural resources of the state, and it shall be and is hereby made their duty to arrest and immediately make affidavit against the suspected violators.”
 
 (Section 3.) (Italics ours.)
 

 Thus it may be seen that in creating Conservation Agents the legislature delegated to them a portion of the sovereign power and functions of the government which they exercise on behalf of and for the benefit of the public. Their duties are definite (they must enforce all of the laws of the state that have been enacted for the conservation and protection of the state’s natural resources), regardless of the fact that some agents are assigned to a particular division of the department primarily charged with supervising only one type of our natural resources (such as forests, minerals, fish, etc.) while others are assigned to another of these divisions. Their duties are continuing, for, so long as the Department of Conservation remains in existence as a part of the executive branch of the state government, its laws must be enforced by these Conservation Agents, and it makes no difference, so far as the permanence and continuance of the position is concerned, that the salaries of these agents vary; that their number vary from time to time; or that an individual who is an agent and today occupies the position that was created by the legislature is superseded or changed tomorrow.
 

 It is our opinion, therefore, that “Conservation Agents of the Department of
 
 *156
 
 Conservation” are state officers within the intendment of Section 1 of Act 78 of 1890. The fact that they (the Conservation Agents) are not required by the act of the legislature creating the office (Act 105 of 1918) to take the oath of office prescribed by the Constitution (Section 1 of Article XIX of the Constitution of 1921) cannot affect the functions and nature of their office or change their status.
 

 We now pass to the second point in this case, that is, as stated in the brief of defendants’ counsel “* * * that the Indictment is * * * faulty because it does not specifically state the facts and circumstances necessary to constitute the offense of bribery of a state officer under Act 78 of 1890.”
 

 It is defendants’ contention that the indictment is fatal in that it does not contain the essential ingredients of the crime of bribery for the reason that the indictment charges the defendants with receiving “* * * a bribe for the ‘purpose of inducing and influencing them,’ as state officers, ‘to protect and shield the said George D. Pipes and one Barlow Inabnet from prosecution for violations of the conservation laws of the State of Louisiana, and the rules, regulations and orders of the Commissioner of Conservation,” and therefore sets forth a mere conclusion which is not supported by any facts or circumstances. They also claim that the indictment does not inform them what power or duty they were influenced to exercise or not to exercise with partiality or favor and does not state which of the many conservation laws, rules, regulations, or, orders were violated or the dates of their occurrence. In support thereof they rely on the following authorities: New Orleans v. Chappuis, 105 La. 179, 29 So. 721; State v. Fontenot; 112 La. 628, 36 So. 630; State v. Foster, 112 La. 746, 36 So. 670; State v. John, 129 La. 208, 55 So. 766; State v. Schwartz, 137 La. 277, 68 So. 608; State v. Jacobs, 145 La. 898, 83 So. 183; State v. Stringer, 162 La. 925, 111 So. 330; State v. Verdin, 192 La. 275, 187 So. 666; State v. Fulco, 194 So. 14, and Boykin v. United States, 5 Cir., 11 F.2d 484, 485.
 

 “The indictment must state
 
 every fact and circumstance necessary to constitute the offense,
 
 but it need do no more, and it is immaterial whether the language of the statute creating the offense, or words unequivocally conveying the meaning of the statute, be used.” Article 227, Code of Criminal Procedure. “It is sufficient to follow the words of the statute, when those words describe the acts constituting the offense with such precision and certainty as to fully inform defendant as to the
 
 nature
 
 of the charge against which he is to prepare his defense, and to furnish him a complete plea of autrefois acquit or convict, in bar of another indictment.
 
 When a statute creating an offense sets out the facts constituting it, it suffices to charge the offense in the language of the statute,
 
 but the use of the identical words is not sacramental, but sufficient, since any words may be used that will unequivocally convey the meaning of the statute, so that defendant cannot be misled as to the. charge he is to answer,
 
 the test being, was defendant fully informed of the crime with which
 
 
 *158
 

 he was charged, for nothing can be taken by intendment.”
 
 1 Marr’s Criminal Jurisprudence 483, Section 325. If “* * * the indictment is couched in the language of the statute, it is sufficient and sets forth a crime denounced by our laws.” State v. Newton, 166 La. 297, 117 So. 231, 232. (Italics ours.)
 

 The Code of Criminal Procedure specifically provides that “No indictment ’ shall be quashed, set aside or dismissed” for any uncertainty existing therein (Article 252) or “on account of any defect in form or substance of the ’ indictment.” (Article 253.)
 

 It is further provided by the Code of Criminal Procedure that the motion to quash is not available to an accused who has not made objection to the indictment “prior to the commencement of the trial” (unless additional time is allowed by the court) and who has not specifically pointed out in the motion to quash the objections to and defects in the indictment. Moreover, “The court may at any time before, during or after the trial amend the indictment in respect to any defect, imperfection or omission in form or substance or of any variance with the evidence.” (Article 253.)
 

 Of course this same article also provides that “If any amendment be.made to the substance of the indictment or to cure a variance between the indictment and the proof, the accused shall on his motion be entitled to a discharge of the jury, if a jury has been impaneled and to a reasonable continuance' of the cause unless it shall clearly appear from the whole proceedings that he has not been misled or prejudiced by the defect or variance in respect to which the amendment is made or that his rights will be fully protected by proceeding with the trial or by a postponement thereof to a later day with the same or another jury. * * *”
 

 If an accused desires to secure additional information or other details which are necessary, and to which he is entitled in order that he might adequately prepare his defense, it is incumbent upon him to request the state to set out, in a bill of particulars, this information or other details. State v. Brinkley, 180 La. 679, 157 So. 388, 389. In that case, like the one before us, this court, upholding an appeal by the state from the ruling of the trial judge sustaining a demurrer to the indictment on the ground that it failed to charge a crime under the laws of Louisiana, said: “In our opinion, the trial court should not have sustained the demurrer in this case, as it could have required the state to furnish a bill of particulars, if it considered that any uncertainty existed in the indictment.” See, also, Articles 235 and 288 of the Code of Criminal Procedure.
 

 From a mere reading of Section 1 of Act 78 of 1890 it is obvious that the gravamen of the offense is the offering or giving of a bribe by any person to an officer, as well as the agreement to accept or the receiving of the same by the officer “* * * to appoint any person to office, to vote or exercise any power in him vested, or to perform any duty of him required with partiality or favor * * *.” In the case at bar the defendants (Conser
 
 *160
 
 vation Agents) are charged with accepting a bribe of $1,000 for favoring the bribe-givers (Pipes and Inabnet) in their (defendants’) enforcement of the conservation laws by shielding and protecting them (the bribe-givers) from prosecution. We conclude, therefore, that the facts and circumstances as stated in the indictment substantially set forth the crime of bribery denounced by Section 1 of Act 78 of 1890. The indictment is couched in the words of the statute and the facts and circumstances upon which it is based are sufficient to inform the defendants of the
 
 nature of the charge
 
 against them and we think that the trial judge, instead of sustaining the motion to quash, should have ordered the state to furnish the defendants with a bill of particulars giving them the additional information which they have set out at length and in detail in their motion to quash, that was reasonably necessary for their preparation of a proper defense of their case.
 

 . The authorities, supra, relied on by the defendants are authority only for the general rule of law that the essential ingredients of a crime with which an accused is charged must be set forth in the indictment, since the accused must be sufficiently informed of the nature and cause of the accusation against him, and are not controlling here because they were decided according to their particular facts.
 

 For the reasons assigned, the ruling of the trial judge quashing the indictment is set aside, the motions are overruled, and the case is remanded to the lower court for further prosecution consistent with the views. herein expressed.