387 So.2d 1151 (1980)
Mary Frances MULLINS et al.
v.
STATE of Louisiana et al.
No. 66854.
Supreme Court of Louisiana.
September 3, 1980.
Rehearing Denied October 6, 1980.
Charles J. Pisano, New Orleans, for plaintiffs-applicants.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Warren E. Mouledoux, Kendall L. Vick, Robert L. Danner, Asst. Attys. Gen., for respondents.
DIXON, Chief Justice.
This declaratory judgment action was filed by seven plaintiffs against the State of Louisiana, the Coroner of Jefferson Parish and the Estate of Bennie Verdun for the stated purpose of declaring the "Status of the Coroner of the Parish of Jefferson as a State Agency to the State of Louisiana." The object of the suit, we gather from the briefs, is to determine whether the state can be held liable in a suit for wrongful death said to have been caused by the coroner. There is no evidence in the record, and the matter was apparently submitted on memoranda filed by the parties.
*1152 The district court overruled all exceptions and rendered judgment for the plaintiffs, "declaring that the Coroner for the Parish of Jefferson is a State Agency of the State of Louisiana," and that "this same agency relationship . . . existed on November 27th, 1972."
The Court of Appeal affirmed the rulings of the trial court on the exceptions, but reversed the holding on the agency relationship of the coroner to the state. Writs were granted on application of plaintiffs.
The Court of Appeal opinion was based on a definition of "agency" in R.S. 36:3 and the relationship between the coroner and the parish government for expenses of the office, a report of his work and for filling a vacancy in the office.
The definition of "agency" in R.S. 36:3(1) is of no relevance to the decision of the question here presented. The first sentence in R.S. 36:3 is: "For the purposes of this Title the following terms shall have the following meanings unless the context clearly indicates otherwise:". Title 36 of the Revised Statutes is "Organization of Executive Branch of State Government," a reorganization statute enacted in 1977.
The proper test for determining whether an office is a state agency was first announced by this court in State v. Taylor, 44 La.Ann. 783, 11 So. 132 (1892), and has been consistently followed by the courts of this state. State v. Dark, 195 La. 139, 196 So. 47 (1940); State ex rel. Porterie v. Smith, 184 La. 263, 166 So. 72 (1935); Williams v. Guerre, 182 La. 745, 162 So. 609 (1935); State ex rel. Porterie v. Jones, 181 La. 390, 159 So. 594 (1935); State v. Titus, 152 La. 1011, 95 So. 106 (1922); State v. Rogers, 138 La. 867, 70 So. 863 (1916); Cosenza v. Aetna Insurance Co., 341 So.2d 1304 (La.App. 3d Cir. 1977); Johnson v. Northern Assurance Company of America, 193 So.2d 920 (La.App. 3d Cir. 1967).
As enunciated by the court in State v. Taylor, supra: ". . . If the office is created by the legislature, or is established in the first instance by the constitution, it is a state office . . ." 11 So. at 133. This rule sets forth a reasonable and practical guide for determining whether a particular office or agency is part of the state government or is parochial or local in nature. The principle embodied in the rule is that ". . . the creation and conferring of an office involves a delegation to the individual of some of the sovereign functions of government . . ." State v. Dark, 195 La. at 149, 196 So. at 50. For example, sheriffs and their deputies have been found to occupy state office, in recognition of the fact that the office of sheriff is created by the state constitution, and operates independently of the parish. Foster v. Hampton, 352 So.2d 197 (La.1977); State ex rel. Porterie v. Jones, supra; State v. Titus, supra; Johnson v. Northern Assurance Company of America, supra.
The office of the coroner, like the sheriff, is created by the constitution, and its existence has been mandated by every state constitution since 1845. See La.Const. of 1974, art. 5, § 29; La.Const. of 1921, art. 7, § 70; La.Const. of 1913, art. 119; La. Const. of 1898, art. 119; La.Const. of 1879, art. 118; La.Const. of 1868, tit. IV, art. 93; La.Const. of 1864, tit. V, art. 84; La.Const. of 1852, tit. IV, art. 80; La.Const. of 1845, tit. IV, art. 83. While it is true that the coroner enjoys only parishwide jurisdiction in the exercise of his functions, the local governing authority has no power to abolish this constitutionally created office. The 1974 constitution is representative of all prior constitutions in its declaration that "[i]n each parish a coroner shall be elected. . ." La.Const. of 1974, art. 5, § 29. (Emphasis added).
The nature of the coroner's office has changed profoundly since its inception in the twelfth century. The office was initially established to safeguard "the pecuniary interests of the crown . . . arising from the administration of criminal justice." I. W. Holdsworth, A History of English Law 84 (7th ed. 1956). For example, the coroner was invested with the power to conduct inquests when there occurred unexplained deaths in order to protect the crown's right to the chattels of convicted *1153 felons. Id. at 85. The purpose of the coroner's inquest was eventually transformed into a tool of the criminal justice system. Here in Louisiana, the coroner's jury and inquest survived until the adoption of the Code of Criminal Procedure in 1966. C.Cr.P. 101; Bennett, The 1966 Code of Criminal Procedure, 27 La.L.Rev. 175, 178 (1967).[1] It is because of its historical function that the constitutions of this state have placed the coroner's office within the judicial branch of state government.
With the abolition of the coroner's jury and inquest in 1966, the significance of the coroner as an instrument of the judiciary has been lessened. We find, nonetheless, that, despite this alteration of the role of the coroner, the office continues to perform state functions, and is not, as found by the Court of Appeal, parochial or local in nature.
Although the coroner has been relieved of his duty to conduct inquests, it is the state legislature, and not the local governing authority, that regulates the coroner's duties and powers. R.S. 33:1551 et seq.; C.Cr.P. 101 et seq. Pursuant to statutory mandate, the coroner is required to "conduct an investigation concerning the manner and cause of any death when informed that death has resulted from violence or accident, or under suspicious circumstances." C.Cr.P. 101. The legislature has carefully detailed the manner in which the coroner is to conduct an autopsy. R.S. 33:1561. The legislature has authorized each coroner to appoint assistants and other helpers whose qualifications are fixed by the legislature. R.S. 33:1552. He is required by the legislature to make written reports to the district attorney concerning the commission of crimes. C.Cr.P. 105. Additionally, the coroner is empowered by the legislature to issue subpoenas. C.Cr.P. 103. Stringent regulation by the legislature, devoid of any control by the local governing authority, assists the coroner in fulfilling his primary function: "to determine the possibility of violations of criminal law or of the existence of public health hazards in certain cases of death." Sizemore v. West Jefferson General Hospital, 260 So.2d 800, 802 (La.App. 4th Cir. 1972).
The Court of Appeal, in finding the office of the coroner to be a parochial or local office, was impressed with the fact that, under the 1974 constitution, when a vacancy occurs, the parish appoints an interim coroner until an election is held. Such a provision is a departure from the 1921 constitution, which provided for vacancies to be filled (for the unexpired term) by the Governor. La.Const.1921, art. 7, § 72. This change does not alter the state nature of the coroner's office. In the first place, the parish appoints an interim coroner only if no chief deputy exists. Secondly, the interim appointment by the parish is operative only until the vacancy is filled by election. Under the 1921 constitution, the Governor's appointee occupied the office until the original term expired. The new system was designed to facilitate "smooth operation and continued efficiency," by having an election as soon as possible. State of Louisiana Constitutional Convention of 1973: Verbatim Transcripts, Vol. XI, August 24, 1973, at 65.
The Court of Appeal, while acknowledging that the fees of the coroner are set by the legislature, pointed out that, pursuant to R.S. 33:1558(B), the parish pays for all "necessary or unavoidable expenses" incurred by the coroner's office. This fact does not defeat the state nature of the office. City courts are supported by the parishes in which they exercise jurisdiction, but the office of city court judge has nonetheless been found to be a state office. Chappuis v. Reggie, 222 La. 35, 62 So.2d 92 (1952); Cosenza v. Aetna Insurance Co., supra; R.S. 13:1874. Likewise, expenses of *1154 district attorneys are paid by the parishes in which they operate. R.S. 16:6. Despite this fact, the district attorney, like the coroner, operates independently of regulation by the local governing authority. See State ex rel. Police Jury of Parish of Vernon v. Davis, 120 La. 862, 45 So. 838 (1908); Nielson v. Jefferson Parish Sheriff's Office, 242 So.2d 91 (La.App. 4th Cir. 1970).
For the reasons assigned, the judgment of the Court of Appeal is reversed, and the judgment of the trial court is reinstated; the State of Louisiana is cast for costs of this appeal.
LEMMON and MARCUS, JJ., dissent and assign reasons.
BLANCHE, J., dissents, being of the opinion that the status of Parish Coroner is that of a parochial officer performing duties in that capacity in the parish in which he was elected to serve.
LEMMON, Justice, dissenting.
Coroners (and sheriff and their deputies, as in Foster v. Hampton, above), perform parish functions and therefore occupy an employer-employee relationship with the parish which exercises primary day-to-day control over their functions. The parish should be held answerable for the torts of such employees committed in the exercise of the functions in which they are employed.[1]
MARCUS, Justice (dissenting).
I agree with the court of appeal that the coroner is either parochial or local in nature; hence, the state cannot be held liable in a suit for wrongful death alleged to have been caused by the coroner. Accordingly, I respectfully dissent.
NOTES
[1] The coroner's inquest in Louisiana was the process by which a jury of five laymen made a determination of the cause of death. In practice, the jury's verdict was considered competent only to prove the fact of death, but was not even prima facie evidence of the cause of such death. See, e. g., Faulk v. Mutual Life Insurance Co., 160 La. 529, 107 So. 395 (1926), and cases cited therein.
[1] The legislature has attempted to overrule Foster v. Hampton by enacting R.S. 42:1441(A), which became effective after the accident in suit. In the future a tort victim will have to attempt either to have Foster v. Hampton overruled or to have R.S. 42:1441(A) declared unconstitutional. I would overrule Foster v. Hampton now.