390 So.2d 497 (1980)
Roy HRYHORCHUK
v.
Roy M. SMITH et al.
Roy HRYHORCHUK
v.
CALCASIEU PARISH POLICE JURY et al.
Nos. 67014, 67021 and 67027.
Supreme Court of Louisiana.
October 6, 1980.
Rehearing Denied December 5, 1980.
*498 John S. Bradford, Stockwell, Sievert, Viccellio, Clements & Shaddock, Lake Charles, for defendant-applicant in No. 67021; for defendant-respondent in Nos. 67014 and 67027.
G. Michael Bourgeois, Camp, Carmouche, Palmer, Barsh & Hunter, Reid K. Hebert, Plauche, Smith, Hebert & Nieset, Frederick L. Cappel, Raggio, Cappel, Chozen & Berniard, J. Michael Veron, Scofield, Bergstedt, Gerard, Hackett & Mount, Lake Charles, Raymond Morgan Allen, Allen, Gooch & Bourgeois, Lafayette, Edmund F. Woodley, Woodley, Barnett, Cox, Williams & Fenet, Lake Charles, for defendants-respondents in all three cases.
H. O. Lestage, III, Hall, Lestage & Lestage, De Ridder, for defendant-applicant in No. 67027 and for respondent in 67014 and 67021.
J. Clem Drewett, Robert W. Thomas, Drewett, Jacques & Thomas, Lake Charles, for plaintiff-applicant in No. 67014 and for respondent in Nos. 67021 and 67027.
*499 WATSON, Justice.
Plaintiff, C. B. Roy Hryhorchuk, a pedestrian, received severe personal injuries on April 28, 1976, at the scene of an automobile accident in Ward 5 of Calcasieu Parish. Intervening in the suit is his separated wife, Lawanda Hryhorchuk. Defendants are the following: (1) Constable Roy M. Smith and his liability insurer, State Farm Mutual Automobile Insurance Company; (2) the Calcasieu Parish Police Jury and its insurers, United States Fidelity & Guaranty Company, Houston General Insurance Company and Travelers Insurance Company; (3) the Calcasieu Parish Sheriff's Department and its liability insurer, North River Insurance Company; (4) the State of Louisiana, through the Department of Public Safety,[1] (5) the State of Louisiana, through the Department of Transportation and Development; (6) William Clifton and his liability insurer, Pennsylvania General Insurance Company; (7) State Farm Mutual Automobile Insurance Company, plaintiff's uninsured motorist carrier.
At the conclusion of plaintiff's evidence, the trial court gave a directed verdict, dismissing plaintiff's demands against the Police Jury, the Sheriff's Department, the State of Louisiana Through the Department of Public Safety, the State of Louisiana Through the Department of Transportation and their insurers. At the conclusion of trial, judgment was rendered in favor of plaintiff against defendants, Roy M. Smith, William Clifton, State Farm and Pennsylvania General, in solido, for $40,000, the limits of liability of the insurance policies. Judgment was also rendered in favor of plaintiff against Smith and Clifton in solido for $587,389.24.
The Court of Appeal, Third Circuit, affirmed the trial court judgment on the liability issues. The Court of Appeal reduced the award of $587,389.24 against Smith and Clifton personally to $50,000 on the basis of their inability to respond in damages. Hryhorchuk v. Smith, 379 So.2d 281 (La.App. 3 Cir. 1979).
The writ applications of plaintiff Hryhorchuk, defendant Smith and his insurer, and plaintiff's uninsured carrier, State Farm, were granted to review the judgment. 381 So.2d 1231, 381 So.2d 1225, 381 So.2d 1226 (La., 1980).

FACTS
These multiple accidents occurred on Louisiana Highway No. 12 three miles from the Texas border in the western part of Calcasieu Parish near Starks, Louisiana. Huey P. Thompson, who was intoxicated, ran off the road and onto the south guard rail of a bridge approach. His vehicle came to rest two to five feet clear of the road. A second minor accident, unconnected with Thompson's caused congestion but also did not block the highway.
William Chapman, a civil service employee of the Department of Transportation, was on duty at the Starks weigh station, which is located one-half mile east of the bridge. The caution lights of the weigh station are visible at the bridge. Chapman and other weigh station employees testified that providing notification of accidents was something they were expected to do. They were instructed to cooperate with all law enforcement agencies. Chapman learned about the situation from a passing trucker, and contacted the Louisiana State Police Headquarters of Troop D in Lake Charles on a police band radio. He was asked to have someone stand by to flag traffic until a trooper could arrive, a standard practice in this rural area. It is forty miles from the Starks scales to Troop D Headquarters. Chapman called the Sheriff's Department but no deputy was available so he asked Roy Smith, Constable of Ward 5, to go to the scene. Chapman said responding to accidents was expected of Smith as a Constable. Smith also testified that this was one of his duties as a peace officer serving the people of Ward 5.
*500 Smith arrived at the accident site about 9:50 P.M. and parked next to the Thompson truck in the eastbound lane of traffic facing west. Several vehicles had safely passed in an eastbound direction prior to his arrival. The truck's headlights were off. There were safer places available for Smith to park; the shoulders were approximately ten feet wide. He placed a small "Kojak" light on the top of his dark blue 1971 Plymouth and turned off the headlights, but left on his amber blinkers. The blinkers on this model car are quite low, on or near the bumper. The hood of the car was slightly raised to allow the engine to remain cool. Hryhorchuk, a friend of Thompson, was standing off the roadway in front of Thompson's truck. Other automobiles and people were nearby. A good samaritan, Harold Ellis, was standing a hundred feet west of the bridge swinging a six volt hand lantern to alert approaching vehicles. During the thirty minute interval between Smith's arrival at the accident scene and Hryhorchuk's injuries, ten or fifteen automobiles passed in both directions. Clifton, who was coming from Texas, saw a blinking light while still a distance from the bridge. He was very familiar with the road and assumed that what he had seen was the caution lights at the weigh station. When he reached the bridge approach, Clifton was momentarily distracted by cars parked on the shoulder and the Ellis lantern. He struck the Smith vehicle without slowing, while traveling 50 to 55 miles per hour. Smith was, of course, parked squarely in Clifton's lane of traffic. The head-on impact between the automobiles propelled the Smith car into Hryhorchuk, knocking him over the bridge embankment into a ravine below. This accident occurred about 10:30 P.M.
State Trooper Bert A. Bolt, Jr., arrived seconds after Hryhorchuk was injured. Roy Smith was on duty when Bolt arrived. A Sheriff's unit was also present at one point. Bolt testified that it is customary in that part of the parish for deputies or constables to tend to injuries, secure the scene and direct the traffic at accidents pending a trooper's arrival. In Bolt's opinion, Constable Smith's automobile was parked in a hazardous position. Bolt cited Clifton for not maintaining reasonable and proper control of his vehicle.
Constable Smith is an elected official. He was first elected as Constable for Ward 5 of Calcasieu Parish in 1972.[2] The term is four years. At the time of the accident, Smith received either $60 or $150 per month from the Parish of Calcasieu. There was a raise at about that time. Constable Smith also had an honorary commission as a deputy sheriff for Calcasieu Parish, but he testified that he went to the accident scene in his capacity as a constable. An affidavit by Sheriff Henry A. Reid, Jr., attests to the fact that Roy M. Smith was not a regular deputy sheriff or a compensated employee of the Calcasieu Parish Sheriff's Department at the time of the accident. Smith has never been formally advised of what a constable's duties are. His office is bonded. He has assisted at other accidents and has made arrests for reckless driving. At the State Attorney General's annual meetings for Justices of the Peace and Constables, Smith was instructed that his duty as a peace officer is to arrest anyone breaking the law. Smith understood his duties to include serving papers for the Justice of the Peace and general service to the residents of Ward 5.
An affidavit by Captain Clarence C. Barton, Captain of Troop D of the Louisiana State Police, a Division of the Louisiana Department of Public Safety, states that Roy M. Smith was not acting on behalf of the State Police of Troop D nor the Department of Public Safety at the time of the accident. The affidavit further states that the radio dispatcher at Troop D is not authorized to request assistance at the scene of an accident authorized by an executive officer or desk sergeant and that no request of that nature was made by a radio dispatcher as to the services of Constable Smith in this accident.
*501 The trial court concluded that Hryhorchuk is now a semi-invalid as a result of extensive damage to the issue, skin and bone of his right leg which required fourteen operations. His disability as a whole is estimated at twenty-five percent and he will suffer for the rest of his life from recurrent swelling, dormant osteomyelitis or bone infection, and pain. He can no longer work in his previous occupation as a welder where he would have earned approximately $15,000 during the year of the accident. The trial court stated in reasons for judgment that not only has Hryhorchuk's work and recreational life been completely disrupted, but that the accident has also contributed to the dissolution of his home. Hryhorchuk, thirty-four years old at the time of the accident, was awarded the discounted amount of his future lost earnings, or $471,209.93, together with $100,000 for pain and suffering and medical expenses of $24,249.56, plus $31,929.75 for loss of wages between accident and trial.
The first issue is the liability of Smith and Clifton.
The evidence amply supports the trial and appellate court's conclusion that the actions of Smith and Clifton combined to cause Hryhorchuk's injuries. The trial court found that Clifton breached his duty of care to the public by failing to slow as he approached the accident scene despite the presence of the "Kojak" light, Smith's blinkers and the lantern waved by Ellis. In view of the activity at the scene, Clifton should have been able to stop or at least slow his automobile before the impact. The testimony was that there was no reduction in his speed and he violated his legal duty to the public in general and Hryhorchuk in particular. The trial court did not err in finding that Clifton's behavior was negligent and substandard.
As to Smith, his commendable purpose was to alert people to the presence of the truck on the bridge railing. However, the truck was clear of the roadway. Smith, by parking his car squarely in the eastbound traffic lane facing west, created an additional hazard which combined with Clifton's negligence to produce Hryhorchuk's injuries. Although Smith had some blinkers and a small "Kojak" light on his automobile, he breached his duty to other motorists by parking on the roadway. Blocking the eastbound traffic lane in the dark was inherently dangerous and "unnecessary to the performance of the emergency function," Hryhorchuk v. Smith, 379 So.2d 281 at 288. Compare Pierre v. Allstate Insurance Company, 257 La. 471, 242 So.2d 821 (1971) and Dixie Drive It Yourself Sys. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962). Smith was negligent.
There is no evidence to establish that Hryhorchuk was contributorily negligent in being at the accident scene trying to render assistance to his friend Thompson. Hryhorchuk was off the road and had no reason to anticipate the sequence of events which occurred.
As to the plaintiff and the two individual defendants, the trial and appellate courts correctly decided the liability issues.
The next question is whether a directed verdict should have been granted in favor of any or all of the other defendants.
The Court of Appeal correctly found that Smith was not acting as an employee or agent of the Calcasieu Parish Police Jury or the Calcasieu Parish Sheriff. Neither the Police Jury nor the Sheriff exercised any supervision over his activities, the most important element in determining employee status. Part of Smith's salary was paid by the Parish. LSA-R.S. 13:2589. However, the Parish had no right to control his activities or to dismiss him. Further, the evidence does not establish that Smith was acting as an agent or direct representative of the Sheriff's Office or the Parish. Smith went to the scene of the accident in his capacity as Constable of Ward 5 of Calcasieu Parish, an elected office. Compare Chaudoin v. Fuller, 67 Ariz. 144, 192 P.2d 243 (1948). There is no liability on the part of the Parish of Calcasieu or the Sheriff of Calcasieu Parish.
A state office is one created by the Constitution or state statute. The Court of Appeal stated:

*502 "It is well settled that a `state office' is one created by the constitution or state statute. State v. Dark, 195 La. 139, 196 So. 47 (La.1940); State v. Titus, 152 La. 1011, 95 So. 106 (La.1922); Chappuis v. Reggie, 222 La. 35, 62 So.2d 92 (La.1952). The office of Constable is a creature of the legislature. LSA-R.S. 13:2581." 379 So.2d at 290.
A constable is an elected officer whose duties are similar to those of a sheriff, although his powers are much less and his jurisdiction smaller. LSA-R.S. 13:2581.2. Like sheriffs and deputy sheriffs, constables are state officers. Williams v. Guerre, 182 La. 745, 162 So. 609 (1935); State v. Jones, 181 La. 390, 159 So. 594 (1935); State v. Titus, supra; Foster v. Hampton, 352 So.2d 197 (La., 1977). Constables perform public functions with authority derived from the State by legislative enactment. As such, a constable is a public officer who exercises a delegated portion of the sovereign power of the State of Louisiana. State v. Dark, supra. Constables have civil duties but have also always been recognized as peace officers. Among the duties given to constables by statute are returns on service, LSA-R.S. 15:30; preserving the peace, LSA-R.S. 13:2586.1; the report of crimes, LSA-R.S. 15:578;[3] and the seizure and sale of property, LSA-R.S. 13:2585. Smith reported to the scene of this accident in his official capacity as an elected official of the State of Louisiana. He was not there as a private citizen.
When a constable is acting in his capacity as a public officer, the State of Louisiana is liable for a tort resulting from his negligent performance of an official duty. Constable Smith was at the scene of this accident in discharge of the duties of his office. Therefore, the State of Louisiana is liable for the negligence of Smith in the course of his employment. Foster v. Hampton, 381 So.2d 789 (La., 1980).
Although the State of Louisiana was named as a defendant "Through the Department of Transportation and Development" and "Through the Department of Public Safety", this is sufficient to make the State of Louisiana a proper party defendant. The two departments named as defendants are both agencies of the executive branch of the State of Louisiana. LSA-R.S. 36:4. Any judgment rendered can only be paid by appropriation of the Legislature. LSA-Const. art. 12, § 10. The State of Louisiana is the real party at interest. See Usry v. Louisiana Dept. of Highways, 459 F.Supp. 56 (1978) and Dagnall v. Department of Highways, State of La., 466 F.Supp. 245 (1979).
The Court of Appeal erred in affirming the directed verdict in favor of the State of Louisiana Through the Department of Public Safety and Through the Department of Transportation and Development. While it is true that the two departments were sued, the State is before the court and the trial court must proceed to determine its liability subject to our holding that the State is liable for the negligence of Smith in the course of his employment as constable. This pretermits consideration of whether Smith was acting as agent of the two departments.
There is no abuse of discretion in the quantum awarded by the trier of fact. The reduction in quantum by the Court of Appeal must, of course, be vacated pending further trial and the judgment of the trial court reinstated.[4]
For the foregoing reasons, the judgment of the Court of Appeal is affirmed in favor of the Calcasieu Parish Police Jury and the Calcasieu Parish Sheriff's Department and *503 their insurers. The judgment of the Court of Appeal is reversed insofar as it affirmed the directed verdicts in favor of the State of Louisiana, Through the Department of Public Safety, and the State of Louisiana, Through the Department of Transportation and Development. The judgment of the Court of Appeal reducing the quantum of damages is vacated and set aside. The judgment of the trial court in favor of plaintiff against Smith and Clifton and their insurers is affirmed but it is ordered that there be further trial on the issue of the liability of the State of Louisiana.[5] The question of the liability of State Farm in its capacity as Hryhorchuk's uninsured motorist carrier remains open pending further disposition in the trial court.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
MARCUS, J., concurs in part and dissents in part and assigns reasons.
BLANCHE, J., dissents and hands down reasons.
LEMMON, J., dissents in part as to dismissal of Parish of Calcasieu.
MARCUS, Justice (concurring in part and dissenting in part).
I agree with all the findings of the majority except the conclusion that a constable is a state officer for whom the state would be liable for damages resulting from the negligent performance of his duties. Accordingly, I concur in part and dissent in part.
BLANCHE, Justice (dissenting).
I respectfully dissent. The evidence indicates that upon his arrival, Smith noted that there were two accidentsone on either side of the road. After surveying the situation, he decided to divert traffic around the Thompson truck, fearing that east-bound traffic would, upon seeing the truck sitting on the edge of the road, tend to "flinch from that truck" and run into the west-bound traffic. This conclusion is far from being a mere "figment of one's imagination". The second accident occurred due to an emergency created by an automobile travelling normally in the east-bound traffic lane suddenly and without warning putting on its brakes and swerving on the highway at the point where the truck was straddling the bridge railing.
Although, upon after-the-fact reflection by the trial judge, in chambers, Smith's efforts to divert traffic may not have been necessary nor, in his opinion, the best course of action, negligence is not proved simply because a subsequent review of the facts would suggest a better and safer course of action. Hickman v. So. Pacific Transport Co., 262 La. 102, 262 So.2d 385 (1972). But hindsight is always blessed with 20/20 vision. The law simply requires that one act reasonably and prudently under the circumstances, not that one take the best course of action. Therefore, in light of the circumstances surrounding the two accidents and the duty placed on Constable Smith to protect the safety of other motorists using the highway, I would conclude that his on-the-spot decision to block and re-route traffic was reasonable.
Smith's actions, however, did create an obstacle, and he did owe a duty to warn passing motorists of the obstruction on the highway. See La.R.S. 32:141(C). The evidence adduced at trial showed that Smith turned on his emergency blinking lights, placed a flashing red "Kojak" light atop his car and used a flashlight to flag down traffic. Mr. Ellis was positioned further down the road waving down traffic with a 6-volt lantern. Considering the various signalling devices employed by Smith, we conclude that he properly discharged his duty to warn oncoming traffic of the obstacle. See Stevenson v. Delahaye, 310 So.2d 651 (La. App. 1st Cir. 1975); Rowe v. Travelers Ins. Co., 253 La. 659, 219 So.2d 486 (1969).
*504 For these reasons, this writer is unable to find that Roy Smith should be found liable for the accident. Beyond a shadow of a doubt, it was Clifton's negligence that was the sole and only cause of the accident. As all admit, he failed to observe the warning lights, the activities on the bridge, the activities of Ellis in attempting to flag him down with a lantern, the congestion of the cars on the shoulder of the road, and failed to bring his vehicle under such control as was necessary to avoid the accident. Clifton just failed to see what he could and should have seen, and he was the sole cause of plaintiff's injuries.

ON APPLICATION FOR REHEARING
PER CURIAM.
In applying for rehearing, the State of Louisiana, through the Attorney General and through the State agencies, has argued that this court should order plaintiff to amend to name the State of Louisiana as party defendant. The opinion of this court held that the State of Louisiana was and is a party defendant. This resulted from plaintiff suing the two State agencies. However, there is nothing to preclude the Attorney General making an appearance on behalf of the State.
The defendants, Roy M. Smith and State Farm Mutual Automobile Insurance Company, have applied for rehearing contending that their third party demands against the State of Louisiana should be remanded to the trial court for consideration. Since Smith was negligent, he and his insurer are precluded from recovery on their third party demands and there is no occasion to remand. The trial court judgment dismissing the third party demand of Smith and State Farm is affirmed.
The applications for rehearing are otherwise denied.
MARCUS, BLANCHE and LEMMON, JJ., would grant as to the issue of the responsibility of the state for the acts of the constable; BLANCHE, J., would also grant as to the liability of the constable.
NOTES
[1] The Department of Public Safety is allegedly insured by Travelers Insurance Company, but the trial court refused to allow a supplemental petition to make Travelers a defendant in that capacity.
[2] In Smith's 1972 election as Constable, he defeated incumbent Huey P. Thompson.
[3] Prior to the effective date of Act 722 of 1979.
[4] The trial court observed that the disparity here between damages and ability to pay is so great that the two cannot be meaningfully reconciled:

"The court finds that the `inability to pay' rule is functional only when there is a common ground which can be reached between the damages due a claimant and the financial abilities of the defendant. * * * For these reasons the inability of the defendants to respond in damages is not considered to be applicable and will not be used by the court to reduce the amount of the award." (Tr. 545)
[5] This judgment is, like that of the trial court, "subject to the rights of the intervenor Lawanda Hryhorchuk, if any". (Tr. 551).