MONROE, C. J., takes no part. O'NIELL, J., concurs in the decree.

═══

(70 South. 863)

No. 21583.

STATE v. ROGERS.

(Nov. 15, 1915, and Jan. 10, 1916. Rehearing Denied Feb. 7, 1916.)

*(Syllabus by the Court.)*

1. OFFICERS ⚥30—DUAL OFFICE HOLDING— DELEGATE TO CONSTITUTIONAL CONVENTION.

A delegate to a constitutional convention is not an officer in the sense of the constitutional prohibition against dual office holding. See

State v. Crawford Doyle et al., 138 La. 350, 70 South. 322.

[Ed. Note.—For other cases, see Officers, Cent. Dig. §§ 37–43; Dec. Dig. ⚥30.

For other definitions, see Words and Phrases, First and Second Series, Officers.]

2. PERJURY ⚥25 — INDICTMENT — SUFFICIENCY.

It suffices that an indictment for perjury charges generally that the false oath was material upon the trial of the issue upon which it was taken.

[Ed. Note.—For other cases, see Perjury, Cent. Dig. §§ 82–89; Dec. Dig. ⚥25.]

3. CRIMINAL LAW ⚥1168—WITNESSES ⚥283—RECALLING OF WITNESS—DISCRETION—APPEAL.

The recalling of a witness is a matter left largely to the discretion of the judge, and his ruling will not be reviewed unless resulting prejudice should clearly appear.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3124, 3125, 3129–3136, 3144; Dec. Dig. ⚥1168; Witnesses, Cent. Dig. §§ 930, 1006, 1007; Dec. Dig. ⚥283.]

4. CRIMINAL LAW ⚥675—EXCLUSION OF EVIDENCE—USELESS REPETITION.

The trial judge may rule out the useless repetition of evidence.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 850, 1607; Dec. Dig. ⚥675.]

5. WITNESSES ⚥318—IMPEACHMENT—CHARACTER EVIDENCE.

Where the character of witnesses has not been assailed, directly or indirectly, evidence of good character is not admissible.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1084–1086; Dec. Dig. ⚥318.]

6. CRIMINAL LAW ⚥1166½ — APPEAL — HARMLESS ERROR—REMARKS OF JUDGE.

The fact that the judge lost his temper, and threatened to fine or imprison counsel for defendant if he persisted in making (what the judge considered) "foolish offerings" of evidence, does not furnish good ground for reversal of the verdict of the jury, especially where the judge instructed the jury to disregard his remarks in reference to counsel's conduct.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3114–3123; Dec. Dig. ⚥1166½.]

7. CRIMINAL LAW ⚥665 — EXCLUSION OF TESTIMONY — SEGREGATION OF WITNESSES — VIOLATION OF RULE.

Where the judge ordered all the absent witnesses to be put under the rule as they arrived, it was within his discretion to exclude one of them, who on his arrival did not report to the court, but remained in the building for several hours, and was seen conversing with a man, who

also had been indicted for perjury committed on the trial of the same case.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1549–1566½; Dec. Dig. ☞ 665.]

8. CRIMINAL LAW ☞957—NEW TRIAL—IMPEACHMENT OF VERDICT.

Jurors are not permitted to impeach their own verdict, either by their evidence, or by their statements made to third persons.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2392–2395; Dec. Dig. ☞ 957.]

Provosty and O'Niell, JJ., dissenting.

Appeal from Fifteenth Judicial District Court, Parish of Beauregard; Alfred M. Barbe, Judge.

Ed. Rogers was convicted of perjury, and appeals. Affirmed.

Stewart, Powell & Ferguson, of De Ridder, for appellant. R. G. Pleasant, Atty. Gen., T. A. Edwards, Dist. Atty., of Lake Charles, and J. H. Jackson, Asst. Dist. Atty., of De Ridder (G. A. Gondran, of New Orleans, of counsel), for the State.

LAND, J. The minutes of the court below disclose that on July 17, 1915, the accused was sentenced, and his counsel was given until July 20, 1915, in which to present bills of exception, and that on the same day, on motion of counsel for defendant an appeal was granted to the Supreme Court, returnable on or before August 10, 1915.

Defendant's counsel state in their brief that their bill of exception to the overruling of the motion for a new trial was presented to the trial judge on July 20, 1915, and that he refused to sign the same because of the pendency of the appeal to this court.

In the cases hitherto decided by this court, bills of exception were presented after an appeal had been granted, but there was no such reservation on the minutes, as appears in this case.

We consider that the appeal herein was moved for and granted subject to the right of the defendant to present his bills of exception, within the delay fixed by the court, to the presiding judge for his consideration and signature.

It is therefore ordered that this cause be remanded for the sole purpose of further proceedings, in conformity to the views above expressed, and that the action of the court below in the matter be reported to this court as soon as practicable.

LAND, J. Defendant was indicted for the crime of perjury, alleged to have been committed on the trial of the case of State of Louisiana v. Mike Salter, on a charge of manslaughter. Defendant was found guilty as charged, and was sentenced to imprisonment in the state penitentiary for a term of five years.

Defendant has appealed, and relies for reversal of the verdict and sentence on numerous bills of exception.

[1] The objection to the indictment and the venire on the ground that the jury commission was not legally constituted because of the participation, in the drawing of grand and petit jurors, of one J. W. Tooke, a former member, who had vacated his office by his election and service as a delegate to the constitutional convention of 1913, was properly overruled, for the reasons stated in the opinion of this court in the recent case of State v. Crawford Doyle et al. (No. 21516) 70 South. 322.[1] In State v. Taylor, 44 La. Ann. 784, 11 South. 132, cited by defendant, this court, commenting on article 159 of the Constitution of 1879, prohibiting dual office holding, said, in part:

"If the office is created by the Legislature, or is established in the first instance by the Constitution, it is a state office, and the holding at the same time two offices so created would manifestly violate article 159 of the present Constitution."

Act No. 1 of the Second Extra Session of 1913 submitted to the electors a proposition

_____
[1] Ante, p. 350.

for the holding of a convention to consist of 80 delegates, for certain purposes and upon certain terms and conditions. This proposition was carried by a majority of the votes cast at the election. Hence, the convention of 1913, with its membership, was created by a direct vote of the people. The legislative action in the premises was restricted to the submission of the proposition to the electors.

The doctrine of State v. Taylor, supra, restricts the scope of the dual office prohibition contained in the Constitutions of 1879, 1898, and 1913, to offices created by the Constitution or the Legislature, or, in other words, to state offices. As those Constitutions are silent as to conventions of the people, and as legislative acts on the same subject-matter consist of mere propositions for submission to the people, it is evident that delegates to a constitutional convention are not state officers.

[2] The defendant moved to quash certain portions of the indictment as follows:

"That portion of the said indictment which alleges that the said Sheffield cursed the defendant Salter; that portion of said indictment which alleges that Salter only struck the said Sheffield twice; that portion of the said bill of indictment which alleges that when the second lick was struck Sheffield told him (Salter) he was whipped; 'don't hit me any more;' and Salter didn't hit him again; the stick broke, and a piece flew out of his hands toward a telephone pole."

The ground of the motion is that all of said evidence was immaterial and irrelevant.

The judge overruled the motion to quash for the following reasons:

"Marlin Salter's defense in the manslaughter case was self-defense. This defense formed the basis of the perjury indictment now considered."

"The facts charged in the bill of indictment, going to establish self-defense, were therefore very material in the Marlin Salter case. They formed part of the res gestæ. The evidence on the trial established this."

The indictment purports to set forth the testimony of the defendant Ed. Rogers, as given on the trial of the case of the State v. Salter, charged with the unlawful and felonious killing of one Sheffield.

The indictment charges that said testimony was on a matter material to the issue, and was false and untrue, to the knowledge of the witness, who well knew that he was not present at or about the scene of the difficulty. The indictment then proceeds, in the usual form, to falsify the statement of facts made by said witness.

"It must appear on the face of the indictment that the matter alleged to be false is material, but it is sufficient to charge generally that the false oath was material upon the trial of the issue upon which it was taken; it is not essential to show particularly in what manner it was material." Marr's Crim. Jur. of La. p. 223.

The motion to quash, so-called, is, in effect, one to strike out certain statements in the testimony of the defendant as set forth in the indictment, on the ground of irrelevancy and immateriality. The motion alleges that the facts that Sheffield cursed Salter; that Salter only struck Sheffield twice; that when the second lick was struck, Sheffield told Salter he was whipped, and to hit him no more, and Salter did not hit him again; and that the stick broke and a piece flew out of his hands towards a telephone pole—were not material to the issue in the case of the State v. Salter. The same testimony was admitted in evidence in State v. Salter, and the indictment charges that it was material to the issue. It is manifest that such testimony, detailing, as it does, the acts and declarations of the participants from the beginning to the end of the difficulty, was material to the issue involved in said prosecution. It is only by isolating the statements of the witness that counsel for defendant have been able to argue that they were immaterial.

The fact that Sheffield cursed Salter, taken in connection with other facts detailed in the testimony of the witness, tended to show that the former was the aggressor. The fact that Salter did not strike Sheffield more than

twice may have been material to show that Salter did not use unnecessary violence in repelling the alleged assault of Sheffield; the fact that the stick broke and a part of it flew out of Salter's hands may have tended to show that he did not strike Sheffield more than twice.

It suffices that this court cannot say on the face of the indictment that the statements set forth in defendant's motion were immaterial and irrelevant to the issue in the case of State v. Salter.

The defendant raised the same question on the trial of this case, but the evidence adduced thereon cannot affect the decision of the motion to quash.

[3] Defendant took a bill of exceptions to the court's refusal to permit him to again recall a state's witness, who had been previously cross-examined twice by defendant's counsel. The bill recites that the defendant's counsel stated to the court that they desired to recall the witness for the purpose of propounding an impeaching question, the nature of which is not stated in the bill. One authority cited by defendant's counsel affirms the right of the state or the defendant to recall a witness for the purpose of laying a foundation for his impeachment. See Underhill on Criminal Evidence, par. 225, p. 411. But in State v. Brown, 111 La. 696, 35 South. 818, also cited by defendant, the court said:

"The trial judge may permit a witness to be recalled in order to be re-examined by the party recalling him. As a matter of discretion, this is not reviewable by the appellate court unless resulting prejudice should clearly appear. It is not unusual for the trial court to allow a witness to be recalled to lay a foundation for his impeachment."

In State v. Walsh, 44 La. Ann. 1122, 11 South. 811, the court said:

"It is a matter wholly within the discretion of the lower court to allow a witness to be recalled to lay the foundation for his impeachment."

The court cited Wharton, Crim. Ev. p. 432, to the same effect, "unless it appear that the error goes to the merits of the case." No prejudice of any kind is disclosed in the bill of exception, and we have been cited to no case or authority holding that a party to a suit has the legal right to recall the same witness twice, for any purpose.

[4] Another bill of exception was taken to the refusal of the court to permit the defendant to call Ashton Kern, who had testified as a witness for the state, for the purpose of impeaching two other state witnesses. The district attorney objected to the evidence for Kern for the reason that he had already testified to the same state of facts as a state witness. The bill recites that:

"The court sustained the objection, and the district attorney then withdrew his objection for the purpose of expediting the trial; but the court nevertheless sustained the objection, for the reason that the evidence elicited from this witness and sought to be elicited was the identical evidence that he had previously given [when] called as a witness on behalf of the state, and the questions that were asked were simply a repetition of the statement of facts, gone over several times, and the court of its own motion overruled counsel for the defendant. To proceed further was a waste of time."

Taking the per curiam for true, we cannot perceive wherein the defendant was prejudiced by the ruling, as the testimony of the witness was already before the jury.

[5] Another bill of exception recites that the defense called Thomas Carroll as a witness for the purpose of proving the characters of Buck Hennigan and Dr. Pollard, witnesses for the defendant; that the state objected to this line of testimony, and the court sustained the objection.

The bill further recites:

"The court then, in the presence of the jury, made the following statement: 'Mr. Ferguson, the court now informs you that if you persist in making such foolish offerings, such as Mr. Carroll, to prove the character of the defendant or a witness, I will either send you to jail or will fine you.'"

The counsel for the defendant excepted to the remarks of the court, and reserved a bill. The judge thereupon instructed the jury to

disregard any remarks made by the court in reference to Mr. Ferguson's conduct.

There is no recital in the bill of exceptions or in the statement of facts, tending to show that the character of the two defense witnesses had been assailed, directly or indirectly. "Evidence of character is excluded until character is brought into question." Wharton's Crim. Ev. vol. 1 (10th Ed.) § 491, p. 1017. The testimony of the two was properly ruled out.

[6] The judge, among his reasons for sustaining the objection to the testimony of Carroll, said:

"The character of the defendant cannot be inquired into, or the character of any witnesses, except in the manner and form as prescribed by law in such cases."

No offer was made by the defendant to prove his own reputation for truth and veracity. Counsel for defendant assert that they were prevented from making such an offer by the threats of the judge. As a witness, the defendant stood upon the same plane as other witnesses. As the accused, the defendant had the right to prove his reputation for truth and veracity.

We do not understand that the ruling or remarks of the judge referred to that kind of evidence, but to the offering of such witnesses as Carroll, to prove the character of witnesses, who had not been impeached in any manner.

The remarks of the judge violated the rules of courtesy, which should be observed between the bench and the bar, and were, for that reason, improper. But we are not satisfied that such remarks prejudiced the case of the defendant before the jury. The judge instructed the jury to disregard his remarks, and they are presumed to have done so. The testimony of five state witnesses that the defendant was not present at the time of the difficulty was amply sufficient to sustain the verdict of guilty.

[7] The next bill of exception relates to the refusal of the court to permit one Bob Cagle to testify in behalf of the defendant, because the witness had not obeyed the order of separation.

It appears that at the beginning of the trial, the court was informed that certain witnesses had not arrived, and counsel on both sides asked the court to place said witnesses under the rule and to instruct them upon their arrival. The witness Cagle arrived at the courthouse about 10 a. m., but was not called upon his arrival, and his presence was not made known to the court until after 12 m., when he was put under the rule. The witness on his arrival did not enter the courtroom, but remained on the lower floor of the courthouse and talked with Marlin Salter, one of the three indicted for perjury committed in the case of State v. Salter.

The judge stated that one of the attorneys for the defendant could have easily had Cagle placed under the rule when he arrived.

The matter of the examination vel non of Cagle, under all the circumstances of the case, was within the discretion of the court below. Marr's Crim. Jur. La. p. 714. Defendant complains that the court below refused to permit him to "take the evidence of the said witness to attach to his bill of exception," or to state in his bill the purpose and object of the evidence of the said witness. The evidence referred to appertained to the merits of the case, as appears from the following recital in the bill:

"Counsel for the defendant asked permission of the court to have the jury sequestered in order to determine whether or not the evidence of the witness was such that could be admitted, regardless of whether or not he had been under the rule. That the court refused to sequester the jury."

Then counsel for defendant asked permission to take down the evidence, or to state it in his bill. There is embodied in the bill a statement of facts made by counsel for defendant relative to the alleged violation of

the rule by the witness, hence the recitals of the bill clearly show that the exception was based on the proper refusal of the judge to admit evidence on the merits of the case.

The next bill was taken to the refusal of the court to permit Bud Dolcote, a witness for defendant, to testify what he told Salter about the case of the State v. Salter. The bill does not disclose the relevancy of the testimony sought to be elicited. The next bill was taken to the action of the court in permitting Bennett, a state witness, called in rebuttal, "to rehash" his testimony. It appears from the bill that Bennett had testified that the defendant was not present at the time of the difficulty, and the defendant had testified that he was present at a certain point 10 feet from Sheffield and Salter. Bennett was recalled to rebut defendant's statement, and testified that the latter was not present at that particular point. Bennett's testimony in chief that he did not see the defendant at the time of the difficulty did not necessarily negative defendant's presence at a particular point, where he might not have been seen by the witness. Defendant, himself, tendered the issue of his presence at a certain point, and we think that the state had the right to rebut his statement.

The application of the rules governing rebuttal testimony must yield to the sound discretion of the trial judge, whose ruling will not be disturbed except in extreme cases. Marr's Crim. Jur. La. p. 744.

If, as contended by the defendant, the testimony of Bennett on the point was a mere "rehash" of his testimony in chief, the record discloses no prejudice to the defendant from the repetition of the evidence before the jury.

Several other bills of exception involve the same question.

As to another bill, counsel for the defendant say in their brief:

"Of course it cannot be well said that this of itself is a reversible error."

[8] Defendant filed a motion for a new trial, which was considered and overruled by the trial judge. Defendant excepted to the ruling.

The bill of exception states that the motion was based on the following grounds:

"(1) That the defendant was not afforded a fair and impartial trial.

"(2) That the verdict was not in accordance with the law and the evidence.

"(3) That one of the jurors had expressed an opinion in the case from which the above case arose, and that, on account of the close relationship of the two cases, he was disqualified to serve on the jury.

"(4) That the trial judge treated the jury to cigars and other confections during the time that they were receiving the evidence and while they were sequestered, and that on account of his having sent cigars, etc., to the jury they were separated during the trial, that is, that one of the jurors left the jury dormitory to go and ascertain what a certain noise was, which was made by a party bringing drinks and cigars to the jury.

"(5) That before the cigars were sent to the jury it was discussed in the jury room that the judge was against the defendant, and was going to send one of the defendant's counsel to jail.

"(6) That one of the jurors had a fixed opinion at the time he was selected as a juror, his statement to the contrary notwithstanding when examined on his voir dire. That said juror was prejudiced against the defendant and stated that he would have convicted him anyway.

"(7) That one of the jurors told in the jury room that he knew of another case where defendant had perjured himself, and then stated a supposed case to the jury a [or] part of them.

"(8) That the first ballot of the jury was seven for conviction and five for acquittal, and later the ballot showed nine for conviction and three for acquittal, and that in order that a unanimous verdict might be reached that the three jurors who voted for an acquittal compromised by inserting into the verdict the recommendation of mercy which was done."

(1 and 2) These grounds are merely conclusions of counsel for the defendant.

(3) Juror Guild testified that he did not know the defendant, and had never expressed any opinion about his guilt or innocence of the crime of perjury. Defendant was a witness in the case of State v. Salter, and Guild's casual expression of adverse opinion as to the verdict of acquittal in that case had no reference to the defendant's testimony therein.

(4) The judge states that during the four days' trial he twice sent cigars to the jury, and on one of the occasions, some Coca-Cola, and that his sole motive in so doing was to make the jury more comfortable. The deputy in charge of the jury testified positively that there was no separation.

The affidavit of one of the jurors to show separation was properly ruled out. Marr's Crim. Jur. La. § 426.

(5) The affidavit of the same juror as to alleged discussion in the jury room was also properly ruled out. Id.

(6) The alleged statements of the juror Alston, made after verdict, were not admissible to prove that he had a fixed opinion, as to the guilt of the defendant, when he was examined on his voir dire, or what communications the said Alston had made to the jury on the subject-matter. Id.

(7 and 8) These grounds are based on statements of jurors made after verdict. Jurors are not permitted to impeach their verdict directly by their evidence, or indirectly by statements made by them to third persons. Id.

We therefore are of opinion that the motion for a new trial was properly overruled.

Judgment affirmed.

PROVOSTY and O'NIELL, JJ., dissent.

———

(70 South. 867)
No. 20207.
J. D. PACE & CO. v. ALEXANDRIA ELECTRIC RYS. CO. et al.

(Jan. 10, 1916. Rehearing Denied Feb. 21, 1916.)

*(Syllabus by the Court.)*

1. BROKERS ⊂⇒84—RIGHT TO COMMISSION—BURDEN OF PROOF—AUTHORITY—PROCURING CAUSE.

A broker, in order to recover commissions, must prove his authority to act, and that he was the procuring cause of the transaction.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 104, 105; Dec. Dig. ⊂⇒84.]

2. CORPORATIONS ⊂⇒426 — OBLIGATIONS INCURRED BY GENERAL MANAGER — BINDING EFFECT.

Where the business of a corporation, composed of a few persons, is loosely conducted, mainly by an officer called "general manager," who is urged by the other members to make contracts and incur obligations on behalf of the corporation, pursuant to a policy approved by them, and not ultra vires of the corporation, and, such an obligation having been incurred, and the consideration therefor having been accepted by the board of directors, composed of practically all the members of the corporation, and having inured to its benefit, the corporation will be considered bound therefor, originally and also by ratification.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1596, 1702–1704, 1707, 1708, 1710–1716; Dec. Dig. ⊂⇒426.]

Appeal from Thirteenth Judicial District Court, Parish of Rapides; W. F. Blackman, Judge.

Action by J. D. Pace & Co. against the Alexandria Electric Railways Company and others. From the judgment, plaintiff and defendant Kent Company, Limited, appeal. Affirmed.

Blackman, Overton & Dawkins, of Alexandria, for plaintiff. Hundley & Hawthorn, of Alexandria, for defendants.

SOMMERVILLE, J. Plaintiff, an ordinary partnership, engaged in the real estate business, sues the Alexandria Electric Railways Company, the Kent Company, Limited, J. A. White, individually, and I. D. White, individually, in the sum of $5,000 as commissions on the sale of the Alexandria electric railway, under an alleged contract of employment with I. D. White, vice president and general manager of the Railways Company, and J. A. White, president of the Kent Company. Judgment is asked against the two companies for the sum named; and in the event the court should conclude that petitioner had no contract with said companies, or either of them, then in the alternative, that there be judgment in its favor and against the defendant companies in solido for $10,000 on a quantum meruit; and,