# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 21-670 consolidated with 21-671

**STATE OF LOUISIANA**

**VERSUS**

**CENTER FOR TECH AND CIVIC LIFE, ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 89811
HONORABLE LEWIS H. PITMAN, JR., DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## VAN H. KYZAR
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Billy Howard Ezell, Van H. Kyzar, and Candyce G. Perret, Judges.

**REVERSED AND REMANDED.**

Jeff Landry
Attorney General
Carey T. Jones
David Jeddie Smith
Ryan S. Montegut
Jeffery M. Wale
Assistant Attorneys General
Louisiana Department of Justice
Civil Division
P.O. Box 94005
Baton Rouge, LA 70802-9005
(225) 326-6000
COUNSEL FOR PLAINTIFF/APPELLANT:
 State of Louisiana

Evan J. Bergeron
Samuel H. Winston
Winston Bergeron, LLP
1700 Josephine Street, Suite 206
New Orleans, LA 70113
(504) 577-2500
COUNSEL FOR DEFENDANTS/APPELLEES:
 Center for Tech and Civic Life
 New Venture Fund d/b/a Center for Secure and Modern Elections
 Dawn Maisel Cole
 Full Circle Strategies, LLC

Rebekka C. Veith
Fishman Haygood, LLP
201 St. Charles Avenue, 46th Floor
New Orleans, LA 70170
(504) 586-5252
COUNSEL FOR DEFENDANTS/APPELLEES:
 Center for Tech and Civic Life
 New Venture Fund d/b/a Center for Secure and Modern Elections
 Dawn Maisel Cole
 Full Circle Strategies, LLC

**KYZAR, Judge.**

In these consolidated matters, the State of Louisiana appeals from a trial court judgment sustaining a peremptory exception of no cause of action on behalf of defendants, Dawn Maisel Cole and Full Circle Strategies, LLC, and from a separate trial court judgment sustaining a peremptory exception of no cause of action in favor of defendants, Center for Tech and Civic Life and New Venture Fund. In sustaining the exceptions, the trial court dismissed the State of Louisiana's claims for permanent injunction and declaratory judgment against the defendants, with prejudice. For the following reasons, we reverse and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

On October 2, 2020, the State of Louisiana, through the Attorney General, filed a petition for injunctive and declaratory relief after learning that election officials in thirteen parishes were being offered grants by private entities, ostensibly as a means of ensuring safe voter turnout during the Covid-19 pandemic. Named as defendants were Center for Tech and Civic Life, New Venture Fund d/b/a Center for Secure and Modern Elections, Dawn Maisel Cole, and Full Circle Strategies, LLC.

The State alleged that it sought "to prevent the injection of unregulated private money into the Louisiana election system and to protect the integrity of elections in the State by ensuring against the corrosive influence of outside money on Louisiana election officials." It alleged more particularly, as follows:

3.

CTCL [Center for Tech and Civic Life] is a non-profit corporation based in Chicago, Illinois that accepts contributions and distributes monies to election officials and jurisdictions.

4.

Its website touts a recent $250 million contribution that it intends to distribute by way of "grants" to election officials and jurisdictions in connection with the upcoming presidential election.

> The Center for Tech and Civic Life (CTCL) is excited to expand our COVID-19 Response Grant program to all U.S. local election jurisdictions. Backed by a generous $250M contribution, CTCL will provide grants to local election jurisdictions across the country to help ensure you have the staffing, training, and equipment necessary so this November every eligible voter can participate in a safe and timely way and have their vote counted.

5.

The New Venture Fund, operating in Louisiana under the trade name Center for Secure and Modern Elections (CSME), partnered with CTCL to solicit applications and information from Louisiana officials in connection with the proposed grants.

6.

CTCL and CSME worked their grant scheme in the State of Louisiana through a lobbyist by the name of Dawn Maisel Cole, owner and operation of Full Circle Strategies, LLC, as their Louisiana representative and agent to target registrars of voters, clerks of court and local election officials.

7.

The scheme targeted 13 parishes, some to receive contributions of *more than $500,000*, accompanied by a request for detailed information about the operations, conduct and expenses of the registrar's/clerk's offices. See, Exhibit A, solicitation from Dawn Cole, attached.

8.

The application for the subject grants captures information from each official applying for a grant including:

You will need to provide the following information in your grant application:

- Number of active registered voters in the election office jurisdiction as of September 1, 2020
- Number of full-time staff (or equivalent) on the election team as of September 1, 2020
- Election office 2020 budget as of September 1, 2020
- Election office W-9
- Local government body who needs to approve the grant funding (if any)

2

- What government official or government agency the grant agreement should be addressed to.

9.

The "grant" also requires the applicant to execute an agreement dictating terms, conditions, limitations and reimbursement requirements in connection with the expenditure of funds that are the subject of the grant.

10.

The grant further requires that the recipient provide a written report detailing the election official's expenditures in connection with the grant amounting to an "information grab" about the operations and expenses of the recipient's office.

11.

Ms. Cole directly solicited registrars and clerks of court to accept contributions from CTCL and New Venture for the operation of their respective offices in the manner reflected in Exhibit A.

12.

Private contributions to local election officials are unlawful and contrary to the methods for election funding established by law in the State of Louisiana, and such contributions by these defendants should be declared illegal and permanently enjoined.

13.

The time, place and manner of holding elections in Louisiana is established by the State subject to regulations set by Congress in accordance with Article I, Section 4, Clause 1 of the U.S. Constitution and La. Const. arts. I, § 26, and XI, § 1 thus making the administration of elections the exclusive province of state and federal governments.

14.

Federal and state laws provide comprehensively and exclusively for the funding of elections and election costs in La. R.S. 18:1400.1 - 1400.8, 1400.21; 29 USC 20901, *et seq.* (HAVA); 15 USC 9041, *et. seq.* (CARES ACT) and related statutes which preempt and preclude the use of private money to fund elections in the State of Louisiana.

15.

Louisiana has seen fit to fund and pay expenses incurred by local election officials, particularly registrars of voters and clerks of court,

through the Secretary of State, parishes, municipalities or other local entities that call an election as required by La. R.S. 1400.1 – 1400.8.

16.

Federal funds that arrive through HAVA are deposited in a special account in the Treasurer's office, referred to as the Help Louisiana Vote Fund, to be allocated and administered by the Secretary of State and the Treasurer as required by La. R.S. 1400.21.

17.

The statutes nowhere provide for the receipt or expenditure of private funds by registrars or clerks of court except as administered and paid by the Secretary of State and parish, municipal or other local governing authority in connection with elections.

18.

The reasons that the Louisiana Legislature and U.S. Congress exclude private funding sources for local elections are obvious enough:

   a.    The influence that would inevitably accompany private financial contributions to local election officials;

   b     Outside donations to local election officials sow distrust in the administration of the election system;

   c     Private contributions would inevitably spawn competition for party and corporate control over local election funding and would lead to bidding for election favor by party and private interests;

   d.    Private contributors are likely to be political parties or large corporations that have partisan and/or economic objectives to foster with their contributions to election officials;

   e.    Private interests, as in this instance, fund particular parishes and particular aspects of the election that they believe advance their election goals and objectives;

   f.    Should registrars and clerks become reliant upon private funding of their governmental activities, they may well be compelled to respond to the objectives of those providing the funding in order to ensure that the funding continues;

4

g.   Such private funding, washed through non-profit organizations, invites the potential for contributions from foreign governments to the Louisiana system and its election officials;

h.   Private contributions open the door to election suits and contests based upon perceived or actual influence on the part of local election officials in the conduct of an election.

19.

It has been the longstanding policy of the State of Louisiana to prevent, in the interest of free and fair elections, the introduction of unregulated and unlimited money in the context of candidate contributions that may create the appearance if not the actuality of corruption.

> L. (1) The legislature recognizes that it is essential to the operation of effective democratic government in this state that citizens have confidence in the electoral process and that elections be conducted so as to prevent influence and the appearance of influence of candidates for public office and of the election process by special interests, particularly by persons substantially interested in the gaming industry in this state.

La. R.S. 18:1505.2.

20.

Louisiana courts have similarly recognized the State's interest in preventing the insidious and corrupting effect of money on the political system in the context of candidate fundraising.

> The primary interest served by the limitations contained in the CFDA, and indeed, by the CFDA as a whole, is the prevention of actual or perceived corruption spawned by the real or imagined coercive influence of large financial contributions on candidates' positions and on their subsequent actions if elected to office.

*State Through Bd. of Ethics for Elected Officials as Supervisory Comm. On Campaign Fin. Disclosure v. Duke*, 94-0398 (La. App. 1 Cir. 4/7/95), 658 So. 2d 1276, 1290, as amended on reh'g (Aug. 4, 1995).

21.

Funding elections through even-handed government administrators acting in the interest of all voters is an imperative of free

5

and fair elections, and elections must remain untainted by money from private sources with private economic or political interests.

22.

Contributions to select officials and jurisdictions skews election funding and favors some local jurisdictions over others resulting in the unequal and inequitable treatment of voters.

23.

Louisiana has a compelling interest in maintaining a free and fair election system untainted by party and corporate money.

24.

Whether the defendants here may be well-intentioned, private money in any amount, but particularly the amount of money offered by the defendants to select clerks and/or registrars, has an inherently insidious and corrupting effect.

25.

At a minimum the appearance of influence buying is inescapable and would undermine the integrity and public trust in elections and in all respects runs counter to the U.S. and Louisiana Constitutions as well as state and federal statutes providing for the funding of Louisiana elections.

26.

The financial contribution scheme advanced by these defendants is contrary to law and would result in irreparable harm to the State of Louisiana, its election officials and voters, and the contributions should be enjoined.

27.

Moreover, the State is entitled to a declaration by the courts that private contributions to local election officials and the election system in general are unlawful and contrary to Louisiana law.

Ten days later, on October 15, 2020, Dawn Maisel Cole and Full Circle Strategies, LLC (collectively referred to as "Full Circle") filed a peremptory exception of no cause of action. Full Circle argued that the State's petition failed to state a cause of action against it "as there is no legal basis to preclude registrars of voters, clerks of court, or other local election officials from seeking and obtaining

6

grant dollars to assist with funding the necessary staff and equipment for the upcoming November 3, 2020 election." It further requested expedited consideration of the exception as it directly concerned "**upcoming local, state, and federal elections set for November 3, 2020, with early voting set to begin tomorrow— October 16, 2020.**"

Following an October 22, 2020 hearing, the trial court sustained the exception, denied the State's request to amend its petition so as to state a cause of action, and dismissed its petition with prejudice. After both the State and Full Circle requested written reasons for judgment, the trial court issued the following reasons, in pertinent part:

> Pending before the Court was defendants' Exception of No Cause of Action and plaintiff's Motion to Continue. The Court took up first the Motion to Continue. Plaintiff's attorney waived the Motion to Continue; whereby counsel for both parties proceeded with oral argument as to the Exception of No Cause of Action.
>
> Defendants argued, orally and by memorandum, Louisiana does not have a prohibition for political subdivisions to accept from private sources grant funds; in particular, registrar of voters and clerks of court. As written in their pre trial memorandum:
>
>> "Under Louisiana law, registrar of voters and clerks of courts are 'political subdivisions' that are allowed to accept private donations for public purposes unless there is restriction provided by law that prohibits them from doing so."
>
> Plaintiff argues there is no law in Louisiana which authorizes the acceptance of private funds to assist in paying for election costs. As stated in its pretrial memorandum:
>
>> "As the State has stated previously, the Louisiana Legislature, pursuant to La.Const. Art. XI, section 1, has enacted the Louisiana Election Code to govern elections and the law as presently written deals comprehensively with election funding. That Election Code framework is so pervasive that it leaves no room to direct extraneous funds to local election officials."
>
> The Court read the Petition for Permanent Injunction and Declaratory Judgment on Behalf of the State of Louisiana (Petition)

7

several times prior to the hearing and once more during the hearing. Paragraph 18 of the Petition lists reasons the Louisiana Legislature and U. S. Congress exclude private funding sources. Each of the reasons listed are speculative and no basis has been pled that such is occurring in Louisiana. Further, in referencing these as the reason to exclude private grant funds, no such law or prohibition is cited in the Petition making private grant funds unlawful. The allegations set forth in the Petition by Paragraphs 12, 21, 22, 24, 25, and 26 are only suggestive as to what harm could arise from the acceptance of private grant funds by local election officials.

The Court finds this Petition is without material facts sufficient to state a cause of action for the relief sought by the plaintiff. There is no prohibition for the granting of private funds to registrars of voters and clerks of courts to assist in the election process.

This Court is not imposing a prohibition because authorization does not exist in the law. This is best reserved to the Louisiana Legislature.

Louisiana Civil Code Article 1528 states:

"The donor may impose on the donee any charges or conditions he pleases, provided they contain nothing contrary to law or good morals."

Accordingly, the Court holds defendants' actions have not been contrary to law or good morals and the Exception of No Cause of Action is sustained.

Louisiana Code of Civil Procedure Article 934 does allow for the amendment of a petition if same would remove the grounds for sustaining the exception. The Court holds without an express prohibition for private grant funds, the grounds for sustaining the exception cannot be removed. The Court denies plaintiff's request for time to amend its Petition.

Formal judgment in accord with these reasons was signed on November 13, 2020. After the trial court denied its motion for new trial, the State perfected its appeal in this matter under docket number 21-670.

Subsequently, on January 11, 2021, Center for Tech and Civic Life and New Venture Fund d/b/a Center for Secure and Modern Elections (collectively referred to as "CTCL") filed a declinatory exception of lack of subject matter jurisdiction and

8

a peremptory exception of no cause of action.[1] It asserted that as the November 3rd election had already occurred, the circumstances underlying the State's alleged claims no longer existed; thus, rendering this issue moot. It further argued that the State failed to state a cause of action against it for the same reasons asserted by Full Circle.

Following a February 4, 2021 hearing, the trial court orally denied CTCL's exception of lack of subject matter jurisdiction[2] but sustained the exception of no cause of action. Based on its rulings, the trial court ordered the dismissal of the State's petition with prejudice. Formal judgment was rendered in this matter on March 3, 2021. On March 28, 2021, the trial court issued written reasons for judgment, as follows:

> The Court has already ruled on the exception of no cause of action as to defendants, Dawn Maisel Cole and Full Circle Strategies. In its prior written reasons for judgment, the Court did not specifically address the Attorney General's request for declaratory judgment.
>
> The Court now clarifies this, pursuant to Louisiana Code of Civil Procedure Article 1871, et seq. The Court need not render a declaratory judgment where the party's rights are certain, because the law speaks for itself.
>
> As a matter of law, there is no federal peremption and no federal prohibition on providing or receiving private funds for public purposes. This is clear by the language of the Helping America Vote Act of 2002, as well as Louisiana Revised Statute 18:1400.21 which was enacted in accordance with the Helping America Vote Act. The Louisiana Election Code does not further restrict the Louisiana Constitution Article VI, Section 23.
>
> This is apparent from the plain clear language of the Louisiana Constitution and Louisiana Revised Statute 18:1400.1 through .8 and

---

[1] CTCL also filed a declinatory exception of insufficiency of service of process, which it later withdrew.

[2] The trial court found applicable the "capable of repetition, yet evading review" exception to mootness. As stated by the supreme court in *State v. Rochon*, 11-9, pp. 11-12 (La. 10/25/11), 75 So.3d 876, 884-85 (quoting *Porter v. Jones*, 319 F.3d 483, 490-91 (9th Cir. 2003): "[C]ases challenging election laws often fall withing the 'capable of repetition, yet evading review' exception because 'the inherently brief duration of an election is almost invariably too short to enable full litigation on the merits.'"

9

Louisiana Revised Statute 18:1400.21. Defendants' right to provide grant funding to Registrars of Voters and Clerks of Court of this state, as well as for those political subdivisions to apply for and accept those funds are not prohibited by Louisiana law.

The Court in following the doctrine of Separation of Powers is constrained from declaring a prohibition where there is none under the law and where such is properly within the purview of the legislature.

The duty of the Court is to accept facts pled as true in deciding whether a cause of action has been stated. This the Court has done in reviewing the petition of the State of Louisiana. Once again, the petition does not allege material facts which state a claim upon which the law provides a remedy; especially not for declaratory judgment in this case.

As in the earlier matter, the exception of no cause of action is sustained. The exception of no cause of action having been sustained as to all defendants, the petition is dismissed in its entirety with prejudice as a final judgment.

The State has likewise appealed this judgment of the trial court under docket number 21-671. On motion of the State, these two appeals were consolidated for appeal purposes.

On appeal, the State asserts two assignments of error:

1.   The trial court erred in holding that Registrars and Clerks are authorized by state law to accept and receive undisclosed, unregulated and unlimited amounts of money by way of conditional grants from private sources for unspecified "election needs."

2.   The trial court erred as a matter of law in rendering judgment on the merits of the case rather than merely determining the sufficiency of the State's petition assuming its allegations to be true.

3.   The trial court erred in maintaining exceptions of no cause of action when a declaratory judgment action and plea for injunctive relief were well-plead on the face of the State's petition.

## DISCUSSION

As provided by La.Code Civ.P. art. 1871, a trial court, within its jurisdiction, "may declare rights, status, and other legal relations whether or not further relief is

10

or could be claimed[]" and that judgment "shall have the force and effect of a final judgment or decree." The purpose of a declaratory judgment article is "to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and [the declaratory judgment articles] are to be liberally construed and administered." La.Code Civ.P. art. 1881. A person, whose rights, status, or other legal relations are affected by a contract, may seek a declaratory judgment to determine any question regarding the construction or validity of the contract "and obtain a declaration of rights, status, or other legal relations thereunder." La.Code Civ.P. art. 1872.

A trial court's grant or denial of a declaratory judgment will not be reversed absent an abuse of discretion. *Campbell v. Evangeline Par. Police Jury*, 14-1301 (La.App. 3 Cir. 5/6/15), 164 So.3d 408, *writ denied*, 15-1067 (La. 9/11/15), 176 So.3d 1043. However, questions of law raised by the judgment are reviewed *de novo*, and the trial court's factual findings are reviewed pursuant to the manifest error—clearly wrong standard of review. *Minvielle v. Iberia Par, Gov't*, 19-269 (La.App. 3 Cir. 11/20/19), 317 So.3d 588. However, we review the instant matter not pursuant to a final judgment on the merits, but rather on the trial court's judgment sustaining the exceptions of no cause of action.

The law pertaining to the peremptory exception of no cause of action was set forth in *Ramey v. DeCaire*, 03-1299, pp. 7-8 (La. 3/19/04), 869 So.2d 114, 118-19, as follows:

> A cause of action, when used in the context of the peremptory exception, is defined as the operative facts that give rise to the plaintiff's right to judicially assert the action against the defendant. *Everything on Wheels Subaru, Inc. v. Subaru South, Inc.*, 616 So.2d 1234, 1238 (La.1993). The function of the peremptory exception of no cause of action is to test the legal sufficiency of the petition, which is done by determining whether the law affords a remedy on the facts alleged in the pleading. *Id.* at 1235. No evidence may be introduced to support or controvert an exception of no cause of action. La. C.C.P.

11

art. 931. Consequently, the court reviews the petition and accepts well-pleaded allegations of fact as true. *Jackson v. State ex rel. Dept. of Corrections*, 00-2882, p. 3 (La.5/15/01), 785 So.2d 803, 806; *Everything on Wheels Subaru*, 616 So.2d at 1235. The issue at the trial of the exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. *Montalvo v. Sondes*, 93-2813, p. 6 (La.5/23/94), 637 So.2d 127, 131.

Louisiana has chosen a system of fact pleading. La. C.C.P. art. 854 cmt. (a); *Montalvo* at p. 6, 637 So.2d at 131. Therefore, it is not necessary for a plaintiff to plead the theory of his case in the petition. *Kizer v. Lilly*, 471 So.2d 716, 719 (La.1985). However, the mere conclusions of the plaintiff unsupported by facts does not set forth a cause of action. *Montalvo* at p. 6, 637 So.2d at 131.

The burden of demonstrating that the petition states no cause of action is upon the mover. *City of New Orleans v. Board of Com'rs of Orleans Levee Dist.*, 93-0690, p. 28 (La.7/5/94), 640 So.2d 237, 253. In reviewing the judgment of the district court relating to an exception of no cause of action, appellate courts should conduct a *de novo* review because the exception raises a question of law and the lower court's decision is based solely on the sufficiency of the petition. *Fink v. Bryant*, 01-0987, p. 4 (La.11/28/01), 801 So.2d 346, 349; *City of New Orleans* at p. 28, 640 So.2d at 253. The pertinent question is whether, in the light most favorable to plaintiff and with every doubt resolved in plaintiff's behalf, the petition states any valid cause of action for relief. *City of New Orleans* at p. 29, 640 So.2d at 253.

In its petition, the State asserts that it is entitled to a "declaratory judgment . . . declaring that funding contributions from the defendants as private sources of election funding is contrary to law and is impermissible under the Louisiana election funding laws[.]" Thus, it sought a permanent injunction "prohibiting the defendants from making, offering, advertising, proposing or in any other manner seeking to introduce or issue grants, contributions, donations or any other funds into the Louisiana election system." Whether the State has set forth a cause of action depends on whether the law actually prohibits such donations.

The State first asserts that the administration of elections is the exclusive province of federal and state governments pursuant to Article I, § 4[3] of the U.S.

---

[3] Article I, § 4 provides, "The Times, Places, and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress

Constitution and Articles 1, § 26[4] and 11 § 1[5] of the Louisiana Constitution. It further asserts that election funding is the exclusive province of federal and state governments pursuant to the Help America Vote Act of 2002 (HAVA), 52 USCA § 20901, as funded by the Coronavirus Aid, Relief, and Economic Security Act (CARES Act),[6] and La.R.S. 18:1400.1-1400.8 and La.R.S. 18:1400.21, which it claims preempts the use of private funding in Louisiana elections.

Chapter 8-A of the Louisiana Election Code provides that the costs of ballots and election materials shall be paid by the secretary of state in gubernatorial and congressional elections. La.R.S. 18:1400.1(A). However, if a local matter also appears on the ballot, the state pays one half of the costs, with the remaining one-half prorated between the state and "all local or municipal entities participating in such election. *Id.* Reimbursement by the local governing authority or school board shall occur promptly to the secretary of state, and any amount not paid within 120 days shall be forwarded by the secretary of state to the attorney general for collection. La.R.S. 18:1400.6(A), (C).

Louisiana Revised Statutes 18:1400.3(A) provides that election expenses incurred by registrars of voters and clerks of court "shall" be paid solely by the state

_____

may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators."

[4] Article 1, § 26 provides:

The people of this state have the sole and exclusive right of governing themselves as a free and sovereign state; and do, and forever hereafter shall, exercise and enjoy every power, jurisdiction, and right, pertaining thereto, which is not, or may not hereafter be, by them expressly delegated to the United States of America in congress assembled.

[5] Article 11, § 1 provides, "The legislature shall adopt an election code which shall provide for permanent registration of voters and for the conduct of all elections."

[6] H.R. 748 included $400,000,000.00 in funding for "Election Security Grants", "to prevent, prepare for, and respond to coronavirus, domestically or internationally, for the 2020 Federal election cycle[.]"

from funds appropriated to the secretary of state unless there is a local matter on the ballot. In that instance, election expenses are paid in the same manner as provided by La.R.S. 18:1400.1. Louisiana Revised Statutes 18:1400.3(D) and (E) defines election expenses as follows:

D. For the purposes of this Section, "election expenses incurred by registrars of voters" is defined and limited to the following:

(1) Expenses incurred by a registrar of voters to pay for one or more temporary part-time clerical employees to perform election duties and responsibilities associated with his office as provided in this Title. Such employees shall be paid at an hourly rate established by the registrar not to exceed that of the minimum pay rate associated with pay level 607 in the Administrative Schedule as specified in the classification and pay plan of the Louisiana Department of Civil Service.

(2) Expenses incurred by a registrar of voters to pay a permanent employee below the level of chief deputy and confidential assistant to perform election duties and responsibilities associated with his office during other than normal hours of operation of his office.

(3) Expenses incurred by a registrar of voters to pay postage for absentee by mail ballots.

(4) Expenses of an extraordinary nature incurred by a registrar of voters for an election which have received prior approval of the secretary of state or his designee.

(5) Expenses incurred by a registrar of voters to pay for law enforcement officers to maintain order during early voting.

E. For the purposes of this Section, "election expenses incurred by clerks of court" is defined and limited to the following:

(1) Actual expenses incurred by a clerk of court to publish notices required by law in the official journal of the parish and, to insure maximum coverage, in any other journal of the parish or political subdivision thereof. Information contained in such notices shall be limited to that required by law. The secretary of state shall prescribe the size of such notices which shall be uniform throughout the state.

(2) Itemized expenses incurred by a clerk of court to conduct the general courses of instruction for commissioners as provided in R.S. 18:431(A) and the course of instruction for commissioners-in-charge as provided in R.S. 18:433(A).

14

(3)(a) Documented expenses incurred by a clerk of court to perform or fulfill election duties imposed by law. For the purpose of this Paragraph, such expenses shall include the following:

(i) Expenses for postage and office supplies used in connection with an election or used to fulfill an election duty imposed by law.

(ii) Expenses for rental space and instructional paraphernalia to conduct schools of instruction for commissioners and commissioners-in-charge.

(iii) Expenses for personnel used in connection with an election or used to fulfill an election duty imposed by law. Such expenses shall be itemized and reimbursement shall be authorized only for work not performed during regular office hours of the clerk of court.

(iv) Incidental expenses incurred in conducting the general courses of instruction for commissioners and the course of instruction for commissioners-in-charge. Reimbursement for such expenses shall be limited to one hundred dollars per general commissioner school and one hundred dollars for the commissioner-in-charge school. Maximum reimbursement to a clerk of court for conducting such schools shall be limited to three hundred dollars per calendar year and all reimbursements shall be deposited in the general fund of the clerk of court.

(b) The secretary of state shall establish rules and regulations governing reimbursement for expenses set forth herein and may establish rules and regulations to add other categories of reimbursable expenses. All reimbursements shall be deposited in the general fund of the clerk.

(4) Expenses of an extraordinary nature incurred by a clerk of court for an election which have received prior approval of the secretary of state or his designee.

(5) Expenses incurred by a clerk of court to pay for law enforcement officers in accordance with R.S. 18:1354(B)(5).

(6) Expenses incurred by a clerk of court to pay for law enforcement officers to maintain order during tabulation and counting of votes at the office of the clerk of court.

(7) Expenses incurred by a clerk of court to pay for law enforcement officers to control traffic on election day to the extent permitted by R.S. 18:428.

Registrars of voters and clerks of court are required to notify the secretary of state of election expenses incurred by them "by the most expeditious means possible, including electronic transfer." La.R.S. 18:1400.3(F).

Louisiana Revised Statutes 18:1400.21 established the Help Louisiana Vote Fund (the Fund), into which monies received from the federal government through HAVA and state appropriated monies are deposited. La.R.S. 18:1400.21. The stated purpose of HAVA (H.R. 3295 October 29, 2002) is:

> To establish a program to provide funds to States to replace punch card voting systems, to establish the Election Assistance Commission to assist in the administration of Federal elections and to otherwise provide assistance with the administration of certain Federal election laws and programs, to establish minimum election administration standards for States and units of local government with responsibility for the administration of Federal elections, and other purposes.

The five accounts created within the Fund are for the deposit of federal monies appropriated to the state through HAVA to be administered by the secretary of state and the state treasurer. La.R.S. 18:1400.21(A), (B). The accounts consist of the Election Administration Account, the Voting Systems Account, the HAVA Requirements Account, the Voting Access Account, and the College Program Account. La.R.S. 14:1800.21(B)(1)-(5).

Based on the foregoing statutes, the State asserts that registrars of voters and clerks of courts are proscribed from accepting private funds from CTCL to pay for election expenses associated with the 2020 presidential election. It further argues that it has a compelling interest in keeping elections free and fair and untainted by the appearance of influence buying that could result from the acceptance of private money by registrars of voters and clerks of court.

In sustaining the exceptions, the trial court ultimately held that registrars of voters and clerks of courts are political subdivisions, as defined by La.Const. art. 6, § 44(2). Thus, as political subdivisions, La.Const. art. 6, § 23 allows them to accept

16

CTCL's grants as the money is intended for a public purpose, to wit: ensuring that registrars of voters and clerks of court have sufficient resources for the presidential election to ensure the safety of voters during the Covid-19 pandemic. However, we find the trial court's conclusion on this issue to be legally incorrect.

In *Mullins v. State*, 387 So.2d 1151, 1152 (La.1980), the supreme court laid out the test for determining whether an office is part of the state or local government:

> The proper test for determining whether an office is a state agency was first announced by this court in *State v. Taylor*, 44 La.Ann. 783, 11 So. 132 (1892), and has been consistently followed by the courts of this state. *State v. Dark*, 195 La. 139, 196 So. 47 (1940); *State ex rel. Porterie v. Smith*, 184 La. 263, 166 So. 72 (1935); *Williams v. Guerre*, 182 La. 745, 162 So. 609 (1935); *State ex rel. Porterie v. Jones*, 181 La. 390, 159 So. 594 (1935); *State v. Titus*, 152 La. 1011, 95 So. 106 (1922); *State v. Rogers*, 138 La. 867, 70 So. 863 (1916); *Cosenza v. Aetna Insurance Co.*, 341 So.2d 1304 (La.App. 3d Cir. 1977); *Johnson v. Northern Assurance Company of America*, 193 So.2d 920 (La.App. 3d Cir. 1967).
>
> As enunciated by the court in *State v. Taylor*, supra: ". . . If the office is created by the legislature, or is established in the first instance by the constitution, it is a state office . . ." 11 So. at 133. This rule sets forth a reasonable and practical guide for determining whether a particular office or agency is part of the state government or is parochial or local in nature. The principle embodied in the rule is that ". . . the creation and conferring of an office involves a delegation to the individual of some of the sovereign functions of government . . ." *State v. Dark*, 195 La. at 149, 196 So. at 50. For example, sheriffs and their deputies have been found to occupy state office, in recognition of the fact that the office of sheriff is created by the state constitution, and operates independently of the parish. *Foster v. Hampton*, 352 So.2d 197 (La.1977); *State ex rel. Porterie v. Jones*, supra; *State v. Titus*, supra; *Johnson v. Northern Assurance Company of America*, supra.

### Clerks of Court

The office of clerk of court is created by Section 28 of Article 5(A) (Judicial Branch) of the Louisiana Constitution, which states, "In each parish a clerk of the district court shall be elected for a term of four years. He shall be ex officio notary public and parish recorder of conveyances, mortgages, and other acts and shall have other duties and powers provided by law." The clerk of court is also the chief

17

election officer of the parish. La.R.S. 18:422. In *Carrier v. St. Landry Parish Police Jury*, 97-1914, 97-1937, pp. 3-4 (La. 3/4/98), 707 So.2d 979, 981 (alteration in original), the supreme court held:

> The office of coroner is provided for in the Louisiana Constitution. La. Const. art. 5, § 29 (stating that "[i]n each parish a coroner shall be elected for a term of four years"). Coroners are members of the judicial branch of government, and although their jurisdiction is limited to the parish in which they hold office, coroners are state officials who perform state functions. *Mullins v. State*, 387 So.2d 1151, 1153 (La.1980). Other state officials with geographically limited jurisdiction include district attorneys, sheriffs, and clerks of court. La. Const. art. 5, §§ 26, 27, 28.

Thus, clerks of court are state officials who operate in a geographically limited jurisdiction. In *D'Amico v. City of Baton Rouge, Parish of East Baton Rouge*, 620 So.2d 1199, 1203 (La.App. 1 Cir.), *writ denied*, 629 So.2d 354 (La.1993), the court held:

> The Clerk of Court's office is a constitutional office under LSA-Const. Art. V., Sec. 28. As a matter of law, the parish exercises no power or discretion in the functioning of the clerk's office. It exists and functions independently of the governing body of the parish. The Clerk of Court's office is, therefore, a state agency, and assuming arguendo that the parish has a constitution, the Clerk of Court's office would not be governed by such.

The court further held that because the clerk of court's office was a constitutional office, the local governing authority had no authority over it pursuant to La.Const. art. 6, § 15. Article 6, § 15 provides that "[t]he governing authority of a local governmental subdivision shall have general power over any agency heretofore or hereafter created by it, including, without limitation, the power to abolish the agency and require prior approval of any charge or tax levied or bond issued by the agency."

### *Registrar of Voters*

The office of registrar of voters is likewise created by the Louisiana Constitution in Section 5 of Article 11 (Elections), which states, "The governing authority of each parish shall appoint a registrar of voters in the manner provided by

18

law" and "[t]he compensation, removal from office for cause, bond, powers, qualifications, and functions of the registrar shall be provided by law." Section 5 further provides that "[n]o law shall provide for the removal from office of a registrar by the appointing authority." *Id.* Pursuant to La.R.S. 18:53, a registrar may only be removed from office by the State Board of Election Supervisors. Thus, the office of registrar is created by authority of the State of Louisiana and the powers, duties and responsibility of the registrar are prescribed exclusively by the legislature as set forth in La.R.S. 18:58.[7]

The registrar shall have the powers to appoint such deputies, confidential assistants, and employees as he or she deems fit, and their salaries are specifically provided for by statute. La.R.S. 18:59. In fact, the registrar's employees are

---

[7]     A. Subject to the direction of the secretary of state and as provided by law, the registrar in each parish shall be responsible for the registration of voters in the parish he serves and for the administration and enforcement of the laws and the rules and regulations of the secretary of state relating to the registration of such voters. He shall participate in the state voter registration computer system established pursuant to R.S. 18:31 and shall provide all necessary assistance to the secretary of state to effectuate the inclusion of his parish in that system.

B. (1) The registrar shall be responsible for conducting absentee by mail and early voting in the parish he serves, as provided by Chapter 7 of this Code.

(2) The registrar shall assign voters in the state voter registration computer system according to each voting district in the parish from which an election is to be conducted. For a primary election, the assignment of voters shall be completed on or before the fifth business day prior to the opening of qualifying for the primary election. For a general election, the assignment of voters shall be completed on or before the fifty-first day prior to the general election.

C. The registrar may administer any oath required by Chapters 2, 3, 4, and 7 of this Code.

D. (1) The registrar shall notify the secretary of state, or his designee, by telephone, electronic mail, or facsimile within twenty-four hours following the discovery of a cyber incident that impacts the office of the registrar, including but not limited to a computer system maintained by the secretary of state.

(2) As used in this Subsection, "cyber incident" means an event that may jeopardize the confidentiality, integrity, or availability of digital information or information systems.

E. Repealed by Acts 1994, 3rd Ex.Sess., No. 10, § 2, eff. Jan. 1, 1995.

19

considered state employees, and the actual number of employees that a registrar may hire is specifically regulated by statute. La.R.S. 18:59.2(A)(1). Although the registrar, deputy registrar, and the registrar's confidential assistant are unclassified employees, the registrar's other employees are classified employees of the state civil service system. La.Const. art. 10, § 2(B); *In re Bankston*, 306 So.2d 863 (La.App. 1 Cir. 1974). Louisiana Revised Statutes 18:60 provides that removal of the deputy registrar or any other employee must comply with state civil service law. Furthermore, registrar of voters and their employees have their own statewide retirement system, separate and apart from the Parochial Employees' Retirement System of Louisiana. La.R.S. 11:2031 *et seq.*

The trial court held that pursuant to La.Const. art. 6, § 23, registrars of voters and clerks of courts, as political subdivisions, "may acquire property for any public purpose by purchase, donation, expropriation, exchange, or otherwise. "Political subdivision," as defined in La.Const. art. 6, § 44(2), "means a parish, municipality, and any other unit of local government, including a school board and a special district, authorized by law to perform government functions." Neither registrars of voters nor clerks of court are included within this definition. The only time they are considered a political subdivision at the local level is for the purposes of dual officeholding and dual employment, as provided by La.R.S. 42:62(9).[8]

Thus, registrars of voters and clerks of court, as shown, are not creatures of local government. Rather, it is clear that they are constitutional offices created by the State pursuant to our constitution, and both offices have only the powers, duties,

---

[8] "Political subdivision" means a parish, municipality, and any other unit of local government, including a school board and a special district, authorized by law to perform governmental functions. In addition for the purposes of this Part, mayor's courts, justice of the peace courts, district attorneys, sheriffs, clerks of court, coroners, tax assessors, registrars of voters, and all other elected parochial officials shall be separate political subdivisions.

20

and responsibilities as granted to them by law. Thus, as neither office was created under Article 6 of the Louisiana Constitution relative to local government, they are not subject to any of the constitutional sections contained in that article, including La.Const. art. 6 § 23.

We are aware of seven federal suits which sought to enjoin CTCL's donations of money in other jurisdictions in conjunction with the November 3, 2020 election. All of these suits were dismissed based on a finding that the plaintiffs, who were private organizations, either lacked standing to bring suit or were not substantially likely to succeed on the merits. *Wis. Voters All. v. City of Racine*, No. 20-C-1487, 2020 WL 6129510 (E.D. Wisc. Oct. 14, 2020), *appeal dismissed*, No. 20-3002, 2020 WL 9254456 (7th Cir. Nov. 6, 2020); *Minn. Voters All. v. City of Minneapolis*, No. 20-2049, 2020 WL 6119937 (D. Minn. Oct. 16, 2020); *Election Integrity Fund v. City of Lansing*, No. 1:20-CV-950, 2020 WL 66059787 (W.D. Mich. Oct. 19, 2020); *Tex. Voters All. v. Dallas Cnty.*, No. 4:20-CV-00775, 495 F.Supp.3d 441(E.D. Tex. Oct. 20, 2020); *Iowa Voter All. v. Black Hawk Cnty.*, No. C20-2078, 2020 WL 6151559 (N.D. Iowa Oct. 20, 2020); *Pa. Voters All. v. Centre Cnty.*, No. 4:20-CV-01761, 496 F.Supp.3d 861 (M.D. Pa. Oct. 21, 2020), *appeal dismissed*, No. CV 20-3175, 2020 WL 9260183 (3d Cir. Nov. 23, 2020), *cert. denied*, _ U.S. _, 141 S.Ct. 1126 (2021); *Ga. Voter All. v. Fulton Cnty.*, No. 1:20-CV-4198, 499 F.Supp.3d 1250 (N.D. Ga. Oct. 28, 2020). However, we note that the grants at issue in these suits were offered to and accepted by the counties or cities holding the elections, rather than by election officials such as registrars of voters or clerks of court.

Moreover, the Louisiana Constitution provides that the secretary of state is the "chief election officer of the state[,]" and that "[h]e shall prepare and certify the ballots for all elections, promulgate all election returns, and administer the election laws, except those relating to voter registration and custody of voting machines."

21

La.Const. art. 4, § 7; La.R.S. 18:421(A). The attorney general "shall be the attorney and legal adviser to each registrar." La.R.S. 18:64. As previously stated, the secretary of state is also responsible for paying all election costs and expenses. La.R.S. 18:1400.1-1400.9. The law further provides that once the secretary of state is informed of the election expenses incurred by registrars of voters and clerks of court, he is responsible for prorating and collecting the costs and expenses spent on elections from among the responsible parties. La.R.S. 18:1400.3(F). Based on the foregoing, we find that the State, through the allegations of its petition, has stated a cause of action to protect an interest of the state by preventing the funding of elections with private money. Accordingly, the judgment of the trial court is reversed, and the matter is remanded for further proceedings.

## DECREE

For the foregoing reasons, the judgments of the trial court sustaining the peremptory exception of no cause of action in favor of Center for Tech and Civic Life and New Venture Fund d/b/a Center for Secure and Modern Elections and in favor of Dawn Maisel Cole and Full Circle Strategies, LLC are reversed. These matters are remanded for further proceedings. Costs of this appeal are assessed equally between the defendants.

**REVERSED AND REMANDED.**